# IN THE COURT OF APPEALS OF IOWA

No. 15-1116
Filed May 25, 2016

IN RE THE MARRIAGE OF TIFFANY LANE SCHULTZEN
AND BRAD JAMES SCHULTZEN

Upon the Petition of
TIFFANY LANE SCHULTZEN,
      Petitioner-Appellee/Cross-Appellant,

And Concerning
BRAD JAMES SCHULTZEN,
      Respondent-Appellant/Cross-Appellee.

_____

Appeal from the Iowa District Court for Woodbury County, Jeffrey A. Neary, Judge.

A husband appeals and a wife cross-appeals the provisions of their dissolution decree. **AFFIRMED AS MODIFIED AND REMANDED.**

John S. Moeller of John S. Moeller, P.C., Sioux City, for appellant.

Elizabeth A. Row of Elizabeth A. Row, P.C., Sioux City, for appellee.

Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**POTTERFIELD, Judge.**

Brad Schultzen appeals and Tiffany Schultzen cross-appeals the provisions of their dissolution decree. Tiffany also cross-appeals the district court's denial of her application for contempt. We modify the dissolution decree to adjust the district court's valuation of two items of property awarded to Brad—a 2000 Ford F-150 pickup truck and a white trailer—and decrease the equalization payment to Tiffany by $3295 as a result. We affirm the dissolution decree in all other respects. We find the district court's denial of Tiffany's application for contempt was not an abuse of discretion.

## I. Background Facts and Proceedings

Brad and Tiffany were married in July 2005 and separated in December 2013. They have one child together, B.S.J.S. (B.S.), born in 2006. Brad and Tiffany dated in high school and then began dating again in 2004. In between, Brad was convicted of a sex offense and served time in prison from 1992 to 2003. As a convicted sex offender, Brad has an ongoing registration requirement.

Brad is a journeyman plumber, but he has had difficulty maintaining employment since being released from prison. He has been terminated from multiple positions, told things were "not going to work" after being hired but prior to beginning a position, and was not hired by employers unwilling to deal with the complications that come with his sex offender status and registry requirements. In approximately 2013, Brad started his own business. He has been self-employed since, although he maintains his self-employment is not by choice but

rather because he had run out of options. Tiffany has full-time employment, where she earns fourteen dollars per hour.

Tiffany filed a petition for dissolution of marriage on January 15, 2014. The district court issued a temporary order on March 24, 2014. The temporary order placed physical care of B.S. with Tiffany and granted Brad scheduled parenting time every week from Wednesday at 3:30 p.m. to Thursday at 8:00 a.m. and every other weekend from Friday at 3:30 p.m. to Sunday at 3:30 p.m. The temporary order also instructed Brad to pay Tiffany back, within forty-five days of the order, half of the $9000 he had withdrawn from the parties' joint account and to pay Tiffany for fifty percent of all uninsured medical and dental expenses for B.S. On November 26, 2014, Tiffany filed an application for contempt alleging Brad had not paid her the $4500 or his share of B.S.'s uncovered medical expenses as ordered.

A two-day bench trial was held on January 29, 2015 and February 3, 2015, at which the court considered both the parties' dissolution and Tiffany's application for contempt. The parties agreed Tiffany should be awarded physical care of B.S., but Tiffany sought sole legal custody while Brad argued for joint custody. The parties also disagreed about the appropriate figure for Brad's income for purposes of calculating child support payments; Brad argued his actual earnings should be used, while Tiffany argued he was self-employed by choice and so his higher past income should be imputed to him. Brad and Tiffany disputed the valuations for a number of assets to be divided between the parties. Finally, Tiffany argued Brad should be held in contempt for having failed

to pay her the $4500 as instructed by the temporary order. Each party requested the court order the other to pay attorney fees.

The district court entered its decree of dissolution of marriage and ruling on contempt application on April 15, 2015. Afterwards, both parties filed motions to enlarge, amend, and modify the decree, and the district court entered a ruling on those motions on May 27, 2015. Brad then filed a motion to clarify and enlarge, and Tiffany filed a motion to enlarge in response, which also resisted Brad's motion to clarify. On June 19, 2015, the district court issued a ruling concluding "the final decree as amended by the [May 27, 2015] ruling on post-decree motions . . . is equitable under the facts of this case." The district court made no further adjustments and gave no further clarification.

Brad now appeals, and Tiffany cross-appeals.

## II. Standard of Review

We review dissolution of marriage cases de novo. *In re Marriage of Schenkelberg,* 824 N.W.2d 481, 483–84 (Iowa 2012). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but are not bound by them. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "Prior cases are of little precedential value, except to provide a framework for analysis, and we must ultimately tailor our decision to the unique facts and circumstances before us." *In re Marriage of Kleist,* 538 N.W.2d 273, 276 (Iowa 1995).

## III. Discussion

### A. Valuation of Property

In Iowa, we "divide the property of the parties at the time of divorce, except any property excluded from the divisible estate as separate property, in an equitable manner in light of the particular circumstances of the parties." *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005); *see also* Iowa Code § 598.21(5) (2013). "An equitable distribution does not mean an equal division." *Schriner*, 695 N.W.2d at 499. On appeal, we will not disturb the district court's valuation of assets included in the marital estate when they are within the range of permissible evidence. *See In re Marriage of McDermott*, 827 N.W.2d 671, 679 (Iowa 2013). "Although our review is de novo, we ordinarily defer to the trial court when valuations are accompanied by supporting credibility findings or corroborating evidence." *In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007).

In his appeal, Brad argues the district court incorrectly over-valued two items of property awarded to him—a 2000 Ford F-150 pickup truck and a white trailer—and that the over-valuation resulted in a $3295 increase in his equalization payment due to Tiffany. He asserts the district court should have used the evidence of value he provided for the items—$2385 and $1300, respectively—rather than the valuations provided by Tiffany—$7775 and $2500. Brad's evidence for his valuations of the truck and trailer was an appraisal by AAA Auctioneers, corroborated by his own testimony about the items; Tiffany's evidence for her valuations was a National Automobile Dealers Association (NADA) Guide "Clean Retail" value for the truck and her own internet research for the trailer.

On our de novo review, we agree with Brad; the district court incorrectly valued both the pickup truck and trailer by using Tiffany's valuations. Although we ordinarily defer to the district court's valuations when they are supported by credibility findings or corroborating evidence, we do not find the testimony and evidence provided by Tiffany adequately support the valuations used by the district court. We are persuaded the AAA Auctioneers appraisal offers a more accurate and individualized representation of the true value of those items.

With respect to the pickup truck, the appraisal valuation was corroborated by Brad's testimony the truck had high mileage, had been in two wrecks, and needed repairs. In contrast, the valuation accepted by the district court is supported only by a NADA price report that was printed off of a website. The NADA document includes varying prices for vehicles of the same year, make, model, and trim options in four different levels of condition: "Clean Retail," "Clean Trade-In," "Average Trade-In," and "Rough Trade-In." Tiffany did not provide evidence sufficient to support the district court's acceptance of the highest valuation—"Clean Retail"—for a pickup truck that was described by Brad as being in far less than perfect shape.

Furthermore, the district court used valuations from the AAA Auctioneers appraisal for other items of property, including furniture, two motocross race bikes, and, most notably, a 2009 Pontiac Torrent awarded to Tiffany. The appraisal valuation for the 2009 vehicle was $7525, meaning the district court found it to be worth two hundred and fifty dollars less than the 2000 pickup truck. We find the record does not contain an adequate basis to support the use of

Tiffany's NADA valuation for the pickup truck; it is equitable to assign the appraised values to both vehicles.

The same goes for the valuation of the white trailer, which was also appraised by AAA Auctioneers. Tiffany did not provide evidence sufficient to support the district court's decision to accept her own internet-search-based valuation instead of the valuation made by a professional valuation company. We find the appraised value should be used for the trailer as well.

Tiffany suggests on cross-appeal that if we find the pickup truck and white trailer require re-valuation, then we should also review "the value of each disputed property item." In making that suggestion, Tiffany mentions the valuation of Brad's tools and a sectional couch. However, she does not present any substantive argument in favor of a specific valuation amount for any particular item; she simply asks that we independently review the valuations of all disputed items. We decline Tiffany's invitation to engage in a wholesale review of every disputed-value determination made by the district court. We find the valuation of the pickup truck and trailer to be a special case, specifically addressed and argued by Brad. We find all remaining property valuations made by the district court are within the range of permissible evidence.

Having determined the 2000 Ford F-150 truck and white trailer awarded to Brad should have been valued at $2385 and $1300, respectively, we modify the judgment of the district court by reducing the equalization payment to be paid by Brad to Tiffany by $3295, from $12,630.50 to $9335.50.

## B. Tiffany's Contempt Application

Tiffany next argues on cross-appeal the district court erred when it declined to hold Brad in contempt. She argues Brad's failure to comply with the court order to pay her $4500 plus fifty percent of their son's uncovered medical expenses constituted willful disobedience and was sufficient to support a contempt finding. Brad argues Tiffany's cross-appeal on this issue is untimely because the parties' post-trial motions seeking to enlarge, amend, and modify the dissolution degree did not toll the thirty-day period for appealing the ruling on Tiffany's application for contempt. *See* Iowa R. App. P. 6.101(1)(b).

Iowa Code section 598.23(1) states, "If a person against whom a temporary order or final decree has been entered willfully disobeys the order or decree, the person *may* be cited and punished by the court for contempt . . . ." (emphasis added). "A party alleging contempt has the burden to prove the contemner had a duty to obey a court order and willfully failed to perform that duty." *Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007). If the party alleging contempt is able to do so, then "the burden shifts to the alleged contemner to produce evidence suggesting the violation was not willful." *Id.* The burden of proof to establish willfulness beyond a reasonable doubt remains with the party alleging contempt. *Id.* "A failure to follow a court order is not willful if a contemner shows the order was indefinite or that the contemner was unable to comply with the order." *Id.*

Assuming, without deciding, Tiffany's cross-appeal on the contempt issue was timely, we find no abuse of discretion by the district court. "[A] trial court is not required to hold a party in contempt even though the elements of contempt

may exist." *In re Marriage of Swan*, 526 N.W.2d 320, 327 (Iowa 1995). Instead, "the trial court may consider all the circumstances, not just whether a willful violation of a court order has been shown, in deciding whether to impose punishment for contempt in a particular case." *Id.* The trial court has broad discretion in deciding whether to hold a party in contempt, and we review for a gross abuse of that discretion. *Id.*

Here, we find the district court's contempt ruling did not constitute an abuse of discretion. The district court considered the circumstances surrounding Brad's failure to pay Tiffany as ordered and concluded Brad's stated reason for not paying her—he chose to have the amount he owed Tiffany be addressed along with the court's overall division of assets and debts—did not reveal evil intent on his part. We do not disturb the district court's ruling because its broad discretion regarding Tiffany's contempt application allows for such a conclusion.

## C. Scheduled Parenting Time

Tiffany next argues on cross-appeal the district court's award to Brad of midweek and extended summer parenting time is not in the best interests of B.S. She claims Brad has not demonstrated any interest in their son and points to evidence Brad did not request additional parenting time or keep in regular telephone contact with B.S. while the temporary order was in place and failed to participate in recent events including parent-teacher conference and other school activities. She also points to evidence of past instances of subpar parenting.

Iowa Code section 598.41(1)(a) instructs:

> The court, insofar as is reasonable and in the best interest of the child, shall order the custody award, including liberal visitation rights where appropriate, which will assure the child the opportunity

for the maximum continuing physical and emotional contact with both parents after the parents have separated or dissolved the marriage, and which will encourage parents to share the rights and responsibilities of raising the child unless direct physical harm or significant emotional harm to the child, other children, or a parent is likely to result from such contact with one parent.

Here, the district court determined joint custody to be appropriate, placed physical custody of B.S. with Tiffany, and granted parenting time to Brad in excess of that which had been granted in the original, temporary order. Under the terms of the dissolution decree, Brad has scheduled parenting time at the following times (excluding holidays): every week from Wednesday at 3:30 p.m. to Thursday when school starts or 9:00 a.m. when there is no school on Thursday; every other weekend from Friday at 3:30 p.m., or whatever time school and school-related activities conclude, to Monday when school starts or 9:00 a.m. when there is no school on Monday; and every other week in its entirety during the summer months of June, July, and August.

We find no abuse of discretion in the scheduled parenting time the district court granted Brad. The record shows Brad cares for B.S., and to the extent Tiffany and her witnesses raised concerns about Brad's parenting, we defer to the district court's credibility determination. The district court's grant of liberal parenting time to Brad is consistent with the statutory preference for maximum continuing physical and emotional contact with both parents and is not contrary to B.S.'s best interests.

### D. Determination of Brad's Earnings for Child Support

Tiffany next argues on cross-appeal the district court incorrectly determined that Brad's child support and share of uncovered medical expenses

should be based upon his actual earnings rather than his earning capacity. She takes issue with the fact Brad has not sought out employment with any established companies during the past year and the fact he stated on the witness stand he is "making it" and "didn't care about being rich." She argues because he is a licensed journeyman plumber and has held jobs in the past for which he earned upwards of $4000 per month, Brad's earning capacity should be based upon the amount he has demonstrated he is capable of earning and he should not be allowed to make the decision to be self-employed in order to lower his earning capacity.

In applying the child support guidelines, the court must determine the parents' monthly income from the most reliable evidence presented. *In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991). "Both parents have a legal obligation to support their children, not necessarily equally but in accordance with his or her ability to pay." *Moore v. Kriegel*, 551 N.W.2d 887, 889 (Iowa Ct. App. 1996). There is "a rebuttable presumption that the amount of child support which would result from the application of the guidelines prescribed by the supreme court is the correct amount of child support to be awarded." Iowa Ct. R. 9.4. However, the obligation "may be adjusted upward or downward . . . if the court finds such adjustment necessary to provide for the needs of the children or to do justice between the parties under the special circumstances of the case." *Id.*

A district court "shall not vary from the amount of child support that would result from application of the guidelines without a written finding that the guidelines would be unjust or inappropriate" under specified criteria. Iowa Ct. R.

9.11. "When a parent voluntarily reduces his or her income or decides not to work, it may be appropriate for the court to consider earning capacity rather than actual earnings when applying the child support guidelines." *In re Marriage of Nelson*, 570 N.W.2d 103, 106 (Iowa 1997); *see also* Iowa Ct. R. 9.11(4) ("The court may impute income in appropriate cases . . . .") Before a court may use earning capacity rather than actual earnings, it must "make a determination that, if actual earnings were used, substantial injustice would occur or adjustments would be necessary to provide for the needs of the child and to do justice between the parties." *Nelson*, 570 N.W.2d at 106; *see also* Iowa Ct. R. 9.11(4). When assessing whether to use a parent's earning capacity, "[w]e examine the employment history, present earnings, and reasons for failing to work a regular work week." *Nelson*, 570 N.W.2d at 106; *see also* Iowa Ct. R. 9.11(4).

Here, the district court ordered Brad to pay Tiffany monthly child support payments of $363.60 based upon a gross annual taxable income of $24,675. Tiffany had requested the court instead impute his earning capacity when calculating the payments based upon evidence Brad had earned approximately $50,000 per year from 2009 to 2011.

On our de novo review, we agree with the district court's decision to use Brad's actual earnings in determining the child support owed to Tiffany. The district court did not make a finding application of the guidelines would be inappropriate, or that use of actual earnings would cause substantial injustice or require adjustments to provide for B.S. We agree with the district court's conclusion that the reduction in Brad's earnings was not a voluntary choice, but was rather one of several unwelcomed effects of his status as a sex offender.

### E. Attorney Fees and Costs

Finally, Tiffany argues on cross-appeal the district court should have awarded her attorney fees below, and also we should award her attorney fees and costs on appeal. "Trial courts have considerable discretion in awarding attorney fees." *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994). "Whether attorney fees should be awarded depends on the respective abilities of the parties to pay," and any fees awarded "must be fair and reasonable." *Id.* "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). Whether appellate attorney fees should be awarded depends upon factors which include "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993).

Considering the respective abilities of the parties to pay, we conclude the district court did not abuse its discretion in ordering each party to pay their own trial attorney fees. We decline to award appellate attorney fees for similar reasons. However, because Brad's appeal was meritorious and Tiffany's cross-appeal was not, we assess costs to Tiffany.

## IV. Conclusion

We find the district court improperly valued the 2000 Ford F-150 truck and white trailer awarded to Brad. We do not otherwise disturb the district court's valuations of property distributed to the parties. We find the district court's denial of Tiffany's application for contempt was not an abuse of discretion. We further find the district court's grant of parenting time to Brad was not contrary to B.S.'s

best interests, and the district court correctly determined Brad's child support payments using his actual earnings as opposed to imputing income to him.

We remand the case so the district court can modify its order to reduce the equalization payment due to Tiffany, consistent with this opinion. Costs of this appeal are assessed to Tiffany.

**AFFIRMED AS MODIFIED AND REMANDED.**