**In re the MARRIAGE OF James Roger HOLCOMB and Jacquelynn Raye Holcomb,**

**Upon the Petition of James Roger Holcomb, Appellant,**

**And Concerning Jacquelynn Raye Holcomb, Appellee.**

No. 89–938.

Court of Appeals of Iowa.

April 24, 1990.

C.R. Hannan of Perkins, Sacks, Hannan, Reilly & Petersen, Council Bluffs, for appellant.

Drew H. Kouris, Council Bluffs, for appellee.

Considered by DONIELSON, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

James Holcomb appeals from a district court order which found him in contempt for failure to pay child support and which ordered him to pay an increased amount of post-high school child support for his youngest daughter. We affirm as modified.

James Roger Holcomb and Jacquelynn Raye Holcomb were married in 1966 and divorced in 1978. The couple had three children, Samantha, born in January 1967, Michael, born in March 1969, and Wendi, born in September 1970. Custody of the children was granted to Jacquelynn. James was ordered to pay child support in the amount of $125 per month per child. The child support was to continue "until such time as each individual child becomes emancipated." James was awarded the family home. Jacquelynn was granted a lien against the real estate in the amount of $7500.

In 1979, James and Jacquelynn executed an agreement entitled "mutual release and satisfaction." The agreement released James from all obligations under the original decree except as to child support. Jacquelynn was given a quit claim deed to the real estate.

The parties agree that when the oldest child, Samantha, turned eighteen, she emancipated herself although she was a high school student. Michael turned eighteen on March 31, 1987, at which time James stopped paying child support. He graduated from high school in early June. Michael remained at home with his mother

until he joined the Navy in October 1987. When Wendi reached eighteen in September 1988 James again assumed his child support obligation ended, and payments ceased.

In June 1988, Jacquelynn filed an application in contempt and application for modification of decree of dissolution. She alleged James was behind in his child support payments for Michael and Wendi. She also requested the child support payments for Wendi should be increased and extended to cover a portion of her college expenses.

A hearing was held, and the district court entered its order. The court found that James's income had increased greatly since the initial, 1978 decree, despite his claims to the contrary and that a material change of circumstances had occurred. The court also determined James's support obligation for Michael continued until his entrance into the Navy.

Based in part on this determination, the court found James in arrears of his child support obligation and in contempt. This contempt could be purged upon payment of the $2225 arrearage. The court further increased James's child support obligation for Wendi. He was to pay $300 per month from June to August 1989, $425 per month from September 1989 until August 1991, and then $475 monthly until September 1992. This payment would cease if Wendi was no longer enrolled in an institution of higher learning.

## I.

To resolve the issues presented by the parties we turn to well-established principles. Our scope of review is de novo. Iowa R.App.P. 4. Although not bound by the trial court's determination of factual findings, we will give considerable weight to them, especially when considering the credibility of witnesses. Iowa R.App.P. 14(f)(7). Prior cases, though helpful, have little precedential value since we must base our decision here primarily on the particular circumstance of the parties presently before us. *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983).

## II.

James asserts the trial court erred in extending his child support obligation to Michael until he joined the Navy. He argues child support cannot continue after age eighteen unless the child has plans for post-secondary education.

Unless a child meets the requirements or exceptions of Iowa Code section 598.1(2), support cannot be imposed by the court for a child who is eighteen or older. *Locke v. Locke*, 246 N.W.2d 246 (Iowa 1976). As the court stated in *Locke*, 246 N.W.2d at 250: "It is clear support payments must cease when a child reaches the age of eighteen unless the evidence establishes that one of the statutory exceptions applies." (Citations omitted.) Section 598.1(2) provides that the support obligation may include support for a child between the ages of eighteen and twenty-two in pursuance of a course of study leading to a high school diploma. Once Michael graduated from high school and was not accepted for admission to a college, university, or area school, James was no longer obligated to provide child support. The trial court's finding that James owes $2225 in back child support is modified. He is to pay $125 per month for the three months Michael remained in high school after reaching eighteen, but is relieved of paying child support for Michael during the four-month interval between graduation and induction into the Navy. As a result, appellant's arrearage is $1725.

The result we reach is consistent with the holding in *In re Marriage of Briggs*, 225 N.W.2d 911 (Iowa 1975). In *Briggs*, the trial court awarded child support until the child attained the age of twenty-one years. The supreme court, in modifying the decree, stated:

In view of this legislative history, we believe the purpose of the 1972 amendment to § 598.1(2) was to bring the obligation to support more in line with the changing concept of adulthood. It is clear the legislature intended that support terminate at eighteen except when the statute specifically provides otherwise. All these exceptions (save the last

which deals with physical or mental disability) are concerned with educational pursuits. Parenthetically we mention that support and maintenance as referred to in §§ 598.17 and 598.21 must be determined under the definition of support in § 598.1(2). Applying that definition in the present case, we hold the trial court's decree erroneously provided for child support as to all of these children. *Id.* at 914.

### III.

The trial court concluded a material change in circumstance occurred warranting an increase in the child support for Wendi. The material change was based on James's increased income since 1978 as well as Wendi's desire to attend college. Our supreme court has held a child's intention to attend college constitutes a material, uncontemplated change of circumstance necessary to modify child support to include college expenses. *In re Marriage of Pieper*, 369 N.W.2d 439, 440 (Iowa 1985).

James asserts he is an "economic eggshell" waiting to break and that his business has operated at a loss for the past three years. However, his failure to file a financial statement prevents us from making such a determination. Additionally, we note that James has purchased a 1988 Corvette and Chevrolet pickup. His monthly payments for these two vehicles total $895. In addition, he purchased a lakeside home at Beaver Lake in eastern Nebraska in 1986 for $90,000, and his monthly payments on this home are $1900. When we couple these items of ownership with those referred to in the trial court's decision, we agree with the trial judge that James is not in the disadvantaged financial position he paints to the court.

We agree with the trial court a substantial change in circumstance has occurred. We affirm the trial court's order as to support for Wendi.

### IV.

Although James steadfastly asserts the mutual release and satisfaction he and Jacquelynn agreed to modified his child support obligations and prohibits Jacquelynn from seeking an increase, we do not agree.

The agreement is clear. It states in four separate paragraphs that Jacquelynn releases Roger from all obligations under the original decree except as to child support. We find no merit in James argument.

### V.

We affirm the trial court's finding James is in contempt of court for his nonpayment of child support. The general rule is that:

[A]n applicant for a contempt citation established a prima facie case by proving the duty which is on the contemner and the contemner's failure to perform the duty. The contemner then has the burden of showing he could not perform the duty, if he relies on that ground. The principle that places the burden on the contemner to show that his default was not willful necessarily means that upon the contemner's failure to make the requisite showing the default may be found to be willful.

*Lamb v. Eads*, 346 N.W.2d 830, 832 (Iowa 1984) (citations omitted). The contemptuous act must be established by proof beyond a reasonable doubt.

The record in this case overwhelmingly supports a finding that James is guilty of contempt. James chose to use his income to finance the purchase of motor vehicles and the Nebraska home rather than to support his children. We affirm the trial court's method extended to appellant to purge his contempt, namely the paying of his arrearage of $1725.

AFFIRMED AS MODIFIED.

DONIELSON, P.J., concurs.

SACKETT, J., dissents without opinion.