# IN THE COURT OF APPEALS OF IOWA

No. 17-0959
Filed July 18, 2018

**MICHAEL TERRY,**
　　Plaintiff,

**vs.**

**IOWA DISTRICT COURT FOR POLK COUNTY,**
　　Defendant.

_____

**RACHAEL TERRY n/k/a RACHAEL MCCANN,**
　　Petitioner-Appellee/Cross-Appellant,

**vs.**

**MICHAEL TERRY,**
　　Respondent-Appellant/Cross-Appellee.
_____

　　Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.


　　Former husband challenges the district court's order dismissing his applications for rule to show cause and granting his former wife's applications for rule to show cause. Former wife cross appeals from the denial of her request for attorney fees. **AFFIRMED ON APPEAL, AFFIRMED ON CROSS-APPEAL, WRIT SUSTAINED.**


　　Earl B. Kavanaugh of Harrison & Dietz-Kilen, P.L.C., Des Moines, for appellant.

Stefanie J. Thomas of Wandro & Associates, P.C., Des Moines, for appellee.

Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**MCDONALD, Judge.**

Michael Terry appeals the district court's order dismissing his numerous applications for rule to show cause. In his applications, Michael requested the district court find his former spouse, Rachael McMann, in contempt of court. Rachael filed her own applications for rule to show cause, alleging Michael violated a court order by failing to pay attorney fees. The district court found Michael in contempt of court, and Michael challenges this order by way of petition for writ of certiorari. In addition to challenging the finding of contempt, Michael contends the penalties imposed for the findings of contempt were illegal and not authorized by statute. Rachael filed a cross-appeal, challenging the district court's declination of her request for attorney fees.

I.

Michael and Rachael married in 2002 and divorced two years later by way of a stipulated dissolution decree. One child, C.T., was born into the marriage. The decree granted the parents joint legal custody of C.T., awarded physical care to Rachael, and awarded liberal visitation to Michael. The decree set forth the parents' responsibilities with respect to C.T. As relevant here, it provided:

> Both parents shall participate equally in the rights and responsibilities of legal custodians, including but not limited to decisions affecting the child's . . . medical care . . . .
> The parties shall consult with each other with respect to . . . medical care . . . related to the child, whose well-being and development shall at all times be the paramount consideration to the parties. If either party has knowledge of any illness, accident, or other matter seriously affecting the well being of the child, that party shall promptly notify the other, and except in emergencies, shall not take any action without notifying the other.
> . . . .
> Both parties shall keep each other informed in a timely manner regarding anything, which affects the child's physical and

emotional well-being. When time permits, each shall provide the other with advanced notice of any medical . . . treatments and appointments including hospitalizations and operations.
. . .
[Michael] shall have reasonable visitation as agreed upon between the parties. All visitations are to be exercised in a reasonable manner that is responsive to the minor child's best interest and schedule of activities. . . .

Over the next several years Michael and Rachael went about their lives without incident. Michael lived overseas for a period of time, and Rachael and C.T. moved to Oklahoma. Eventually both parents returned to Iowa.

In 2014, Michael filed a petition to modify the parties' decree, seeking physical care of C.T. The district court declined to grant Michael physical care of the child, but the district court did increase Michael's visitation with the child and modified the child support award. The district court's ruling made clear all of the other provisions of the stipulated decree remained in effect. The district court also awarded Rachael attorney fees and set up a twelve-month payment plan for Michael. During the modification action, the parties' animosity toward each other increased a great deal.

This appeal arises out contempt actions filed after the completion of the modification action. The first group of contempt actions relates to the medical care of C.T. In the fall of 2016, Rachael discovered some of C.T.'s artwork. The artwork caused Rachael some concern due to violent content regarding a relationship between a father and a child. Rachael text messaged Michael and subsequently discussed her concerns with him. She also contacted her ex-husband, Ken McCann, a pediatrician, to express her concerns. Shortly thereafter, a parent of C.T.'s best friend contacted Rachael to express concern for C.T.'s safety. The

parent told Rachael that C.T. told the friend that C.T. wants to self-harm and that C.T. has suicidal thoughts when in Michael's care. The same day, a counselor from C.T.'s school contacted Rachael to share that C.T.'s friends reported C.T. has suicidal thoughts and self-harms when staying with Michael. The counselor also called Michael. After receiving this information, Rachael made an appointment for C.T. with a child therapist for the following business day. Rachael told Michael about C.T.'s scheduled therapy appointment, but she would not tell him the name of the provider, the time, or the location because C.T. indicated she did not want Michael present at the appointment. Following the initial appointment, Rachael scheduled another appointment for the first available time. Rachael gave the appointment information to Michael, and he attended the next session. Rachael continued to schedule appointments and notify Michael of them. Michael did not attend the subsequent appointments. Michael filed six contempt actions against Rachael, one for each appointment she scheduled without first contacting Michael.

The second group of contempt actions relates to visitation with the child. For approximately six weeks, C.T. refused to attend visitation with Michael. Michael became upset with Rachael over C.T.'s refusal and stated Rachael should force C.T. to attend visitation with him. Rachael declined to do so. However, as C.T. continued with her therapy, she became more receptive to visitation with Michael and began attending. Michael filed a contempt action against Rachael for each missed visitation period—eighteen in total.

For her part, Rachael brought three contempt actions against Michael for his refusal to pay the attorney fees awarded in the modification proceeding. The

attorney-fee award was to be paid in monthly installments, but Michael had missed three of the installments.

Following a trial, the district court found Michael failed to prove Rachael willfully violated the terms of the dissolution decree in scheduling therapy appointments for C.T. The district court also found Rachael did not act contumaciously with respect to C.T.'s missed visitation with her father. The district court found Michael willfully violated the modification decree by refusing to pay the attorney-fee award. As a sanction, the court adjusted the payment plan from a twelve-month schedule to a sixty-five-month schedule paid via a wage withholding order pursuant to Iowa Code section 598.23(2)(a) (2017). Additionally, the court ordered Michael to participate in twelve months of therapy with C.T. pursuant to Iowa Code section 598.23(2)(d) and serve ten days in Polk County jail. As it relates to court costs, the court split costs equally between the parties.

II.

Iowa Code section 598.23 provides that "If a person against whom a . . . final decree has been entered willfully disobeys the order or decree, the person may be cited and punished by the court for contempt." Contempt may be characterized as willful disobedience. *See Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007). Contempt proceedings are quasi-criminal in nature and each element must be proved beyond a reasonable doubt. *See In re Marriage of Ruden*, 509 N.W.2d 494, 496 (Iowa Ct. App. 1993). The petitioning party carries the burden of showing the contemnor willfully failed to obey a court-mandated duty. *Ary*, 735 N.W.2d at 624. If the petitioner can evidence the contemnor's violation of a court order, then the burden shifts to the contemnor to show the violation was

not willfully done. *Id.* Evidence of willfulness must show "conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemnor had the right or not." *Amro v. Iowa Dist. Ct.*, 429 N.W.2d 135, 140 (Iowa 1988) (quoting *Lutz v. Darbyshire*, 297 N.W.2d 349, 353 (Iowa 1980)). The contempt statute provides only that a "person *may* be cited and punished" for contempt. Iowa Code § 598.23 (emphasis added. Thus, "a trial court is not required to hold a party in contempt even though the elements of contempt may exist." *In re Marriage of Swan*, 526 N.W.2d 320, 327 (Iowa 1995). Because the statute provides for the exercise of trial court discretion in citing and punishing a person for contempt, our review of the district court's denial of the application is for an abuse of discretion. *See id.* Further, we will affirm the judgment of the district court unless it is demonstrated the district court grossly abused its discretion in denying the application. *See id.*

A.

We begin our review with the court's dismissal of Michael's six counts of contempt against Rachael for failing to consult Michael before scheduling C.T.'s therapy appointments. The district court found the decree permitted Rachael to independently schedule C.T.'s initial therapy appointment without involving Michael because C.T.'s emotional state constituted an emergency situation. The district court further found that Rachael made Michael aware of the subsequent appointments.

In determining whether the district court abused its discretion in declining to hold Rachael in contempt, we first discuss her duties under the parties' decree.

The stipulated decree granted both parents the right to participate in decisions affecting C.T's medical care, required they consult each other with respect to C.T.'s medical care, required both to notify the other of any illness or matter seriously affecting C.T., and prevented one from taking any action without notifying the other except in emergency situations.

Michael first argues the district court abused its discretion in finding Rachael was permitted to schedule the initial appointment because C.T.'s condition qualified as an emergency situation. We disagree. Michael conceded that C.T.'s emotional state was "a little shocking" and that the parents needed to focus on C.T. While Michael chastises Rachael for failing to secure a weekend appointment for C.T. and not taking C.T. to the hospital immediately upon learning of C.T.'s threats of self-harm, Michael fails to acknowledge that Rachael took the first available appointment. Further, there is no evidence Rachael intended to violate the decree when scheduling the initial appointment. When Rachael learned of the information, she contacted Michael to discuss the same. She informed Michael of the appointment. While it is true she failed to disclose details regarding the appointment, this is reasonable conduct given C.T.'s threats of self-harm related to her contact with Michael and C.T.'s statements she would not participate in treatment with Michael present. Rachael's conduct is supported by the decree, which provides that C.T.'s "well-being and development shall at all times be the paramount consideration to the parties." The district court did not abuse its discretion in dismissing Michael's application.

With respect to the counts regarding the subsequent appointments, Michael again argues Rachael violated the stipulation by scheduling appointments before

first consulting Michael. Yet Michael attended the second appointment and indicated he would not participate in any more based on a belief that would be best for C.T.'s treatment. Given this indication, it was reasonable for Rachael to assume Michael consented to C.T. continuing treatment and she would not need to inquire with him before scheduling each subsequent appointment. Michael concedes that Rachael kept him informed regarding upcoming appointments. Additionally, Michael never objected to the therapy, never objected to the care provider, and never stated any preference for different appointment dates or times. Certainly Rachael did not interfere with Michael's right to participate in decisions when he voluntarily removed himself from the situation. Even if the stipulation could be interpreted to require Rachael to consult Michael before scheduling each appointment, her assumption that she was not required to do so was reasonable and falls far short of a willful violation. The district court did not abuse its discretion in dismissing Michael's application.

B.

Next Michael challenges the district court's denial of his contempt application alleging eighteen violations of the stipulation for missed visitation with C.T. Rachael concedes that C.T. missed these visitations with Michael. Michael urges the court to conclude Rachael was required to force C.T. to attend visitation with Michael or penalize her for not attending. We note Rachael encouraged visitation between C.T. and Michael. While it is true Rachael stopped short of punishing C.T. for not attending the visitation, this does not rise to the level of a willful violation of a court order. We are also mindful of C.T.'s concerns that she would harm herself if required to attend visitation with Michael during this time.

Certainly this factor is worthy of consideration. *See In re Marriage of Swan*, 526 N.W.2d at 327 (permitting a court to consider all relevant circumstances). Because Michael cannot show Rachael attempted to interfere with visitation or that she stood by and did not encourage visitation, he failed to show she willfully disregarded the visitation terms. *See In re Marriage of Ruden*, 509 N.W.2d at 496 (concluding court properly dismissed contempt action when teenage children refused visitation); *see also In re Marriage of Boomgarden*, No. 09-1904, 2010 WL 2925828, at *2 (Iowa Ct. App. July 28, 2010) (refusing to find father in contempt with regard to the mother's missed visitation when there was no evidence the father discouraged visitation or stood passively by when children refused to attend).

## C.

Michael next challenges the district court's finding he was in contempt of court for failing to make installment payments towards Rachael's attorney fees. *See* Iowa Code § 665.11 (requiring a contempt finding be challenged through a writ of certiorari). Because certiorari is an action at law, our review is for errors at law. *See Ary*, 735 N.W.2d at 624. "In our review of a certiorari action, we can only examine 'the jurisdiction of the district court and the legality of its actions.'" *Id.* (citing *Christensen v. Iowa Dist. Ct.,* 578 N.W.2d 675, 678 (Iowa 1998)). An illegality exists when the court's findings are not supported by substantial evidence or when the law is improperly applied. *See Amro,* 429 N.W.2d at 138. We review a contemnor's sentence for an abuse of discretion. *Ary*, 735 N.W.2d at 624.

The district court concluded Michael willfully disobeyed the attorney-fee award associated with the dissolution modification proceedings when he failed to

make his monthly installment payments for three months. Michael argues the court erred in its conclusion because he did not have the ability to make the payments. He cites the court's revision of the payment plan lowering the amount of the monthly installments as evidence of this. While this is certainly evidence that Michael did not have the ability to make the monthly payments in full, it also indicates he was able to pay some amount. The court may base its contempt finding on a portion of Michael's violation—the portion of the monthly installment he could pay but did not. *See Skinner v. Ruigh*, 351 N.W.2d 182, 186 (Iowa 1984) (concluding contempt may be sufficiently shown when a portion of the defaulting conduct is willful). Michael admits he knowingly failed to make any payments of any amount toward Rachael's attorney fees for three months, but the district court identified at least some discretionary expenses Michael could have avoided and instead made some payments towards his attorney-fee obligation. *See In re Marriage of Holcomb*, 457 N.W.2d 619, 622 (Iowa Ct. App. 1990) (noting inability to pay is not a defense to a contempt claim when the contemnor continues to make discretionary purchases). Given Michael's ability to make some payment and failure to make any, we will not disturb the district court's findings.

While the court's finding of contempt was proper, Michael correctly notes its imposed sanctions were not. The court ordered wage withholding pursuant to Iowa Code section 598.23(2)(a), which permits wage withholding "under the terms and conditions of chapter 252D." But chapter 252D specifically addresses delinquent child-support payments. *See* Iowa Code §§ 252D.1, 252D.16. Because section 598.23(2)(a) only permits income withholding for delinquent child-support

payments, the court erred in authorizing its wage withholding order through this code section.

The court also ordered Michael to attend twelve months therapy with C.T. pursuant to Iowa Code section 598.23(2)(d). Again this section of the code does not permit such a remedy. Any alternative punishment must relate to the subject matter involved. Iowa Code § 598.23(2). Here that is Michael's nonpayment of Rachael's attorney fees. The therapy requirement is not related to Michael's nonpayment and not permissible under Iowa Code section 598.23(2)(d). The district court abused its discretion by imposing punishment not authorized by the cited code sections.

## D.

Michael also argues the court should have reduced or eliminated the attorney-fee award due to his financial condition. If Michael wanted to challenge the attorney-fee award, he should have done so through the appeal process. *See* Iowa R. App. P. 6.103 (noting final orders and judgments are appealable)*; see also In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013) (challenging attorney-fee award on direct appeal). The district court was not at liberty to disturb the award amount in the underlying proceedings.

## E.

Finally we address Rachael's cross-appeal alleging the district court abused its discretion by declining to award her attorney fees associated with the contempt proceeding. Attorney fees may only be awarded when statutorily authorized. *Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 182 (Iowa 2010). Iowa Code section 598.24 permits an award for attorney fees when the court determines a party is in

contempt of a dissolution decree. But the award is discretionary and not mandatory. Trial courts are granted considerable discretion when making such determination. *See In re Marriage of Hunt*, 476 N.W.2d 99, 103 (Iowa Ct. App. 1991). We review the district court's decision for an abuse of discretion. *See In re Marriage of Hankenson*, 503 N.W.2d 431, 433 (Iowa Ct. App. 1993). On review of the record and the parties' financial condition, we cannot say the district court abused its discretion by declining to award attorney fees.

## F.

Rachael and Michael each request appellate attorney fees. An award of attorney fees on appeal is not a matter of right but rests within the court's broad discretion. *See In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). "We consider the needs of the party making the request, the ability of the other party to pay," the relative merits of the appeal, and whether the party making the request was obligated to defend the district court's decision on appeal. *See id.* After full consideration of all the relevant factors, we conclude that the parties shall be responsible for their respective appellate attorney fees.

## III.

For the foregoing reasons, we affirm the district court's dismissal of Michael's applications to hold Rachael in contempt of court. We also sustain the writ. While the district court did not err in finding Michael in contempt of court, it abused its discretion in imposing unauthorized punishments for the contempt. We

vacate the unauthorized punishments.  On Rachael's cross-appeal, we affirm the judgment of the district court.

**AFFIRMED ON APPEAL, AFFIRMED ON CROSS-APPEAL, WRIT SUSTAINED.**