# IN THE COURT OF APPEALS OF IOWA

No. 17-0593
Filed October 24, 2018

IN RE THE MARRIAGE OF EDWARD D. GUTCHER
AND NANCY A. GUTCHER

Upon the Petition of
**EDWARD D. GUTCHER,**
      Petitioner-Appellant,

**And Concerning**
**NANCY A. GUTCHER,**
      Respondent-Appellee.

_____

      Appeal from the Iowa District Court for Monroe County, Randy S. DeGeest,

Judge.


      Appeal and cross-appeal challenging the economic provisions of a decree

of dissolution of marriage. **AFFIRMED AS MODIFIED AND REMANDED.**



      Bryan J. Goldsmith of Gaumer, Emanuel, Carpenter & Goldsmith, P.C.,

Ottumwa, for appellant.

      Heather M. Simplot of Harrison, Moreland, Webber & Simplot, P.C.,

Ottumwa, for appellee.


      Heard by Danilson, C.J., and Doyle and McDonald, JJ.

**McDONALD, Judge.**

This is an appeal and cross-appeal from the decree dissolving Nancy and Edward (Ed) Gutcher's twelve-year marriage. In Ed's appeal, he contends the district court erred in invalidating the parties' prenuptial agreement and challenges the district court's award of reimbursement spousal support to Nancy. In Nancy's cross-appeal, she contends the district court erred in refusing to hold Ed in contempt for failing to preserve assets, contends the property division was inequitable, seeks an award of traditional spousal support, and requests additional trial attorney fees.

I.

Ed and Nancy began dating in 2002. They began living together in 2003. They married in 2004. This was Ed's second marriage, and it was Nancy's third marriage. Shortly before their wedding Ed presented Nancy with a premarital agreement, which she signed.

The parties' financial circumstances are relatively straight-forward. At the time they married, Nancy worked as a nurse. Ed worked at Pella Corporation and farmed part-time. The farm consisted of four-hundred acres of land used for row crop and livestock. Eventually, Ed ceased employment with Pella to farm full-time. The farm never had a profitable year from the time the parties met until they divorced. Nonetheless, Ed was able to continue to farm due to repeated refinancing of his operating loans and due to Nancy's income. All of Nancy's income was used to pay the parties' living expenses, which subsidized Ed's perpetually unprofitable farming operation. By the time of trial, Ed's farming operation had been reduced to one-hundred-thirty-five acres, but the value of the

farmland he owned increased significantly due, in part, to land improvements made over the course marriage.

At the time of trial, Ed suffered from various medical and health conditions. At the time of trial, Ed was sixty-five years old. In 2002, Ed suffered an acute work-related injury while employed with Pella resulting in the loss of several of his fingers. He also suffered and continues to suffer from various cardiovascular ailments. During the course of the marriage, he underwent triple-bypass surgery. Nancy's nursing experience allowed her to provide convalescent care for Ed. The parties dispute to what extent Ed is currently limited by his health conditions. Ed contends he is limited, but he admits he has farmed full-time and intends to farm full time for the next decade.

Nancy suffers from her own medical condition. At the time of trial, Nancy was fifty-nine years old. After the parties married, Nancy developed occipital neuralgia, a form of nerve damage that causes her to suffer pain. Nancy tried several medical treatments to alleviate her near-constant pain, but the treatments were not successful. Eventually, with Ed's approval, Nancy moved to Colorado to manage her pain through the use of legal, medicinal cannabis oil. She testified the cannabis oil treatment is helpful. However, she is now unable to work and receives disability payments.

Ed filed this dissolution action upon Nancy's move to Colorado. With respect to the property division, Ed sought to enforce the premarital agreement to prevent division of the parties' premarital property. The district court invalidated the agreement, noting Nancy did not have legal representation when she signed the agreement and the agreement contained no financial disclosures. When the

court divided the parties' property, the district court incorrectly found Ed's farm "was inherited and/or a gift" and incorrectly concluded the property could not be divided. To compensate Nancy for her financial contributions to the marriage, the district court awarded Nancy reimbursement spousal support in the amount of $1200 per month for ten years. It also awarded Nancy her car, personal bank accounts, personal property in her possession, a camping trailer, an ATV (all-terrain vehicle), an Iowa State Fair camping spot, and items of sentimental value.

II.

Dissolution cases are reviewed de novo, including challenges to prenuptial agreements. *See In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013) (stating dissolution actions are reviewed de novo); *In re Marriage of Shanks*, 758 N.W.2d 506, 510-511 (Iowa 2008) (noting "the general rule is that issues concerning the validity and construction of premarital agreements are equitable matters subject to . . . de novo review" even though questions about the validity of a premarital agreement are similar to contract disputes). "Although our review is de novo, we afford deference to the district court for institutional and pragmatic reasons." *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017); *accord In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015) (noting we give great latitude to the district court in fixing spousal support); *In re Marriage of Benson*, 545 N.W.2d 252, 257 (Iowa 1996) ("This deference to the trial court's determination is decidedly in the public interest. When appellate courts unduly refine these important, but often conjectural, judgment calls, they thereby foster appeals in hosts of cases, at staggering expense to the parties wholly disproportionate to any benefit they might hope to realize."). As such, we will not modify a decree unless

the district court failed to do equity. *See In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). "Prior cases are of little precedential value, except to provide a framework for analysis, and we must ultimately tailor our decision to the unique facts and circumstances before us." *In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995) (citing *In re Marriage of Will*, 489 N.W.2d 394, 397 (Iowa 1992)).

## A.

We first address Ed's contention the district court erred in holding the prenuptial agreement was not enforceable.

Iowa Code chapter 596 (2016) governs the enforceability of a prenuptial agreement executed on or after January 1, 1992. *See Shanks*, 758 N.W.2d at 511. A prenuptial agreement is not unenforceable merely because it is "a bad fiscal bargain for one party." *In re Marriage of Spiegel*, 553 N.W.2d 309, 316 (Iowa 1996) ("[W]e will not so grossly interfere with the parties' freedom to contract."), *superseded by statute.* However, a premarital agreement is unenforceable under any of the following circumstances:

> a. The person did not execute the agreement voluntarily.
> b. The agreement was unconscionable when it was executed.
> c. Before the execution of the agreement the person was not provided a fair and reasonable disclosure of the property or financial obligations of the other spouse; and the person did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other spouse.

Iowa Code § 596.8(1).

We first turn our attention to the question of whether the agreement was unconscionable when executed. "The concept of unconscionability includes both procedural and substantive elements. Procedural unconscionability generally involves employment of sharp practices, the use of fine print and convoluted

language, as well as a lack of understanding and an inequality of bargaining power." *Shanks*, 758 N.W.2d at 515 (citations omitted and altered for readability). When considering if an agreement is procedurally unconscionable, we consider the challenging party's ability to seek independent counsel, the legal and financial sophistication of the parties, the time the challenging party had to consider the agreement prior to the marriage, the use of technical language in the agreement, "and the use of fraudulent or deceptive practices to [secure] the [challenging] party's assent." *Id.* at 517. "A substantive unconscionability analysis focuses on the harsh, oppressive, and one-sided terms of a contract." *Id.* at 515 (citation omitted).

Like the district court, we conclude the agreement here was procedurally unconscionable. Here, the parties provided conflicting testimony as to when Nancy received the agreement. Ed stated it was before the wedding. His signature is dated three days prior to the wedding. Nancy testified Ed may have signed the agreement three days prior to the wedding, but he did not present the agreement to her until the day of the wedding. We find Nancy credible on this issue. Nancy was not represented by counsel. Given the short-time between the presentation of the agreement and the wedding, it was not practicable for her to obtain counsel. Nancy did not have particularized knowledge or expertise relating to legal and financial issues. Springing the prenuptial on Nancy on the day of the wedding is procedurally unconscionable.

In addition, Ed failed to make a fair and reasonable disclosure of his assets at the time of the marriage. A fair and reasonable disclosure requires each party have "'adequate knowledge' of the other party's property and financial obligations."

*See id.* at 519 (citing Iowa Code § 596.8(3)). Although the agreement stated financial affidavits were attached to the agreement, there were none. While Nancy knew Ed farmed part-time, there is no evidence she was aware of the scope of Ed's farming operation or the value of Ed's assets at the time the parties married. Her ability to determine the scope of Ed's assets was limited, in part, because Ed owned some farmland and rented other farmland. There is no evidence Nancy had any knowledge of the extent of Ed's assets.

Because the premarital agreement is unenforceable, we will address the property division without regard to the terms of the premarital agreement.

B.

Before addressing the property division, we first address the issue of spousal support. Spousal support is not an absolute right; an award depends upon the specific circumstances of each case. *See Gust*, 858 N.W.2d at 408. Our cases recognize three primary forms of spousal support: traditional, rehabilitative, and reimbursement. *See id.*; *In re Marriage of Nelson*, No. 15-0492, 2016 WL 3269573, at *3 (Iowa Ct. App. June 15, 2016). Our cases also recognize a limited fourth category of spousal support—transitional support. *See, e.g.*, *In re Marriage of Hansen*, No. 17-0889, 2018 WL 4922992, at *16 (Iowa Ct. App. Oct. 10, 2018) (McDonald, J., concurring specially); *In re Marriage of Lange*, No. 16-1484, 2017 WL 6033733, at *3 (Iowa Ct. App. Dec. 6, 2017) ("Jessica does not need traditional rehabilitative support so much as transitional support while finding suitable employment.").

We conclude this case does not justify an award of traditional spousal support. Traditional support is typically warranted in long-term marriages where

the earning potential of the parties may be reliably predicted. *See Gust*, 858 N.W.2d at 410. "[T]he shorter the marriage, the less likely a court is to award traditional spousal support." *Id.* Twenty years is the generally accepted durational threshold for the award of traditional spousal support. *See id.* at 410-11. Nancy and Ed's marriage of thirteen years falls well short of the durational threshold, making a traditional support award inapplicable under the facts presented. *See In re Marriage of Stephens*, No. 13-0861, 2014 WL 69728, at *7 (Iowa Ct. App. Jan. 9, 2014); *In re Marriage of Gonzalez*, 561 N.W.2d 94, 99 (Iowa Ct. App. 1997).

Rehabilitative support is also inapplicable here. "Rehabilitative spousal support is 'a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting.'" *In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008) (quoting *In re Marriage of Francis*, 442 N.W.2d 59, 63 (Iowa 1989)). In this case, Nancy does not seek further training or education. She suffers from a disability and is now unable to work. Rehabilitative support is inappropriate in this case.

Nor is reimbursement spousal support appropriate under the circumstances of this case. "Reimbursement spousal support allows the spouse receiving the support to share in the other spouse's future earnings in exchange for the receiving spouse's contributions to the source of that income." *Id.* This occurs when the dissolution occurs shortly after one spouse has obtained a professional degree and license with the financial support of the other. *See In re Marriage of Mueller*, No. 01-1742, 2002 WL 31425414, at *3 (Iowa Ct. App. Oct. 30, 2002). Here, Nancy

did not contribute to Ed obtaining a professional degree that would enhance his future earnings.

Nancy argues reimbursement support should nonetheless be awarded because she contributed financially to the marriage, which allowed Ed to continue with his unprofitable farm operation. We disagree. Reimbursement support cannot be applied so broadly. Reimbursement support applies only in "situations where the marriage is devoted almost entirely to the educational advancement of one spouse" and "there has not been enough time for the parties to receive the benefit from the educational advancement through tangible assets accumulated during the marriage." *In re Marriage of Erpelding*, No. 16-1419, 2017 WL 2670806, at *6 (Iowa Ct. App. June 21, 2017), *vacated on other grounds*, __ N.W.2d __, __, 2018 WL 3322921 (Iowa July 6, 2018). This case is indistinguishable from *Erpelding*. In that case, this court denied the wife's request for reimbursement spousal support where she contributed financially to the family's farm. *See id.* This court explained reimbursement support did not apply outside the context of one spouse contributing to the educational attainment of the other spouse. *See id.* Further, *Erpelding* held the wife's contributions were better reflected in the property division. *See id.* Similarly, in *In re Marriage of Probasco* the supreme court denied the wife's request for reimbursement support where the wife contributed financially to the family's acquisition and operation of a successful restaurant franchise. *See* 676 N.W.2d 179, 185-86 (Iowa 2004). Our supreme court reasoned the following facts "militate[d] against an award of reimbursement [support]:" the marriage was not short in length, one party did not spend the majority of the marriage gaining additional education, the wife remained "active in

the job market during the marriage," and there was sufficient property to divide permitting the court to do equity via a property settlement. *See id.* at 186. We see no reason to deviate from *Erpelding* and *Probasco*, and we conclude it would be inequitable to award Nancy reimbursement support.

Nancy has not requested transitional support, and we decline to award it. Transitional support applies where the recipient spouse already has the capacity for self-support at the time of dissolution but needs short-term assistance in transitioning from married status to single status due to the economic dislocation caused by the dissolution of marriage. *See, e.g.*, *Hansen*, 2018 WL 4922992, at *17 (McDonald, J., concurring specially). The critical consideration is whether the recipient party has sufficient income and/or liquid assets to transition from married life to single life without undue hardship. *See, e.g.*, *id.* (collecting cases); In *re Marriage of Hinshaw*, No. 12-1783, 2013 WL 3273584, at *4 (Iowa Ct. App. June 26, 2013) (affirming transitional support award where spouse testified support "would help her 'get back on [her] feet' as far as establishing a residence for herself and the children" (alteration in original) (citation omitted)); *In re Marriage of Byrne*, No. 03-0788, 2003 WL 23220082, at *3 (Iowa Ct. App. Nov. 26, 2003) ("Of the approximately eighty thousand dollars worth of property she received, less than one half of that amount was in cash or other liquid assets available to assist in her transition to self-sufficiency.").

Nancy contends "[i]t doesn't matter what the court called the spousal support award," she should be awarded spousal support because she has financial need. She relies on *Becker* for the proposition that spousal support can be awarded even though the award does not fall into any generally-recognized

category of support. *See* 756 N.W.2d at 827. While *Becker* is frequently cited for that legal proposition, it is a misreading of *Becker*. *Becker* did not state courts are free to fashion spousal support awards outside any traditionally-recognized category of support. Instead, *Becker* stated more than one of the traditionally-recognized forms of spousal support may be applicable to a particular case thus resulting in a hybrid award. *See id.* ("We cannot characterize the support we are awarding Laura as strictly rehabilitative or traditional spousal support. Factually, the support award may be a *combination of both* because this spousal support award will allow Laura to maintain the same standard of living she enjoyed during the marriage throughout the period of time it will take her to become self-sufficient at her maximum earning capacity."). *Gust* confirmed this more limited reading of *Becker*. In *Gust*, the court stated "[o]ur cases applying the statute have identified three kinds of support: traditional, rehabilitative, and reimbursement." 858 N.W.2d at 408. While the *Gust* court recognized "the categories may overlap in some cases," it did not state courts are free to award support outside of the generally-recognized categories. *See id.* (referencing *Becker*, 756 N.W.2d at 827 as an example of an instance when overlapping categories of spousal support are appropriate and classification as one type of support is not required).

Even if *Becker* allowed for non-categorical forms of spousal support, the circumstances justifying such an award should be extraordinary. We should not be quick to recognize new categories of spousal support. Nor should we be lax in applying the generally-recognized categories to the facts of a particular case. Financial need, in and of itself, is not sufficient reason to justify an award of spousal support. *See* Iowa Code § 598.21A(1)(a)-(j) (permitting a court to award spousal

support after considering *all* of the factors listed); *Gust*, 858 N.W.2d at 408 (noting statutory factors "cannot be considered in isolation from each other"). Once a court has determined a spouse has a need for financial support, the next question is not whether the other spouse has the ability to pay. Instead, the next question is whether the facts and circumstances of the case are such that it would be equitable to require the other spouse to satisfy the financial need. The answer to that question is derived from looking at the principles embodied in the traditionally-recognized forms of spousal support. Among the galaxy of cases, the generally-recognized categories of support are constellations providing guidance in navigating what is equitable in the otherwise uncharted waters of spousal support.

Here, there are no generally-recognized categories of spousal support applicable to the case at hand. This was a marriage of moderate duration not warranting traditional support. Nancy is at the end of her career and unable to work. She does not seek financial support for a limited time while obtaining additional education and training to improve her earning capacity. Nancy did not contribute to Ed's education or improve his earning capacity. The district court should not have awarded spousal support under the circumstances presented. Any spousal support already paid to Nancy shall be set off against our property award as determined below.

C.

We next address the division of the parties' property. "Iowa is an equitable distribution state." *McDermott*, 827 N.W.2d at 678. "Although an equal division is not required, it is generally recognized that equality is often most equitable." *In re*

*Marriage of Rhinehart*, 704 N.W.2d 677, 683 (Iowa 2005). In effort to divide property equitably, we consider the following factors:

> a. The length of the marriage.
> b. The property brought to the marriage by each party.
> c. The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking . . . .
> d. The age and physical and emotional health of the parties.
> . . . .
> f. The earning capacity of each party . . . .
> . . . .
> i. Other economic circumstances of each party . . . .
> j. The tax consequences to each party.
> . . . .
> m. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21(5). One party's greater need for assets may warrant a larger property award. *See Rhinehart*, 704 N.W.2d at 684.

Ed concedes the district court erred in finding his farming assets were gifted to him or inherited. He contends the property should not be subject to division because it is premarital. We disagree. "Premarital property may be included in the divisible estate." *McDermott*, 827 N.W.2d at 678. While a "court may assign varying weight to premarital property, [the court] should not automatically award [premarital property] to the spouse who owned the property prior to the marriage." *Id.*

Equity requires an equal division of the parties' property, including the parties' premarital property. Ed brought significant assets, including farming assets, into the marriage. He would not have been able to retain the farming operation without Nancy's sizable financial support of Ed's perpetually unprofitable farm for the entirety of the marriage. This includes all of her wage income over the

course of the marriage and the use of the equity in her premarital home. In addition, Nancy was afflicted with a debilitating illness during the course of the marriage and is now unable to work. A sizeable property settlement paid immediately will alleviate some of her need. We find the property settlement preferable to an award of spousal support given that it will be paid sooner rather than later and given that there is a serious question of whether Ed will be able to pay support over time. We recognize this may force Ed to sell all or part of his farmland. We also recognize Iowa courts try to avoid forced sales of family farming operations. *See id.* at 683 ("[W]hen one of the parties expresses a strong interest in preserving the farm, the court should do everything possible to respect that desire."). However, Ed's desire to continue farming does not usurp Nancy's right to an equitable settlement. *See id.*

According to Ed's most recent financial affidavit, drafted on February 12, 2017, his net worth amounts to $318,389.83. Nancy is entitled to a property equalization payment of half this amount, $159,194.92. However, because Ed's affidavit includes the 2009 Ford Escape, 2004 Kawasaki ATV, and the camping trailer already awarded to Nancy in the decree, we subtract their total value of $13,265.00 from the property-equalization-payment award. We thus award Nancy a property equalization payment in the amount of $145,929.92, with credit awarded for any amount previously paid as spousal support. This equalization payment shall be entered as a judgment due six months from the date of this opinion with interest accruing at the statutory rate.

D.

We next address Nancy's challenge to the district court's refusal to hold Ed in contempt for violating an order to preserve assets. A court's refusal to hold a party in contempt is reviewed "to determine if substantial evidence exists to support the . . . court's finding." *See In re Marriage of Hankenson*, 503 N.W.2d 431, 433 (Iowa Ct. App. 1993) (citing *In re Marriage of Wegner*, 461 N.W.2d 351, 354 (Iowa Ct. App. 1990)). Contempt may be characterized as willful disobedience. *Ary v. Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007). "[C]ontempt proceeding[s] [are] essentially criminal in nature" requiring each element be "established beyond a reasonable doubt." *In re Marriage of Ruden*, 509 N.W.2d 494, 496 (Iowa Ct. App. 1993).

Nancy did not prove Ed failed to preserve assets. *See Ary*, 735 N.W.2d at 624 (noting petitioner carries the burden of showing the respondent willfully failed to obey a court-mandated duty). We agree with the district court's characterization of Ed's conduct as normal in the course of the farm operation, which the order to preserve assets expressly permitted. We affirm the district court in this respect.

E.

Finally we address Nancy's request for additional trial attorney fees. She alleges the district court abused its discretion by requiring Ed to only pay $2500.00 of her trial attorney fees. A district court's attorney fee award is reviewed for an abuse of discretion. *Francis*, 442 N.W.2d at 67. The award must be fair and reasonable and based on the parties' ability to pay. *See In re Marriage of Miller*,

552 N.W.2d 460, 465 (Iowa Ct. App. 1996). We find the district court did not abuse its discretion in awarding only a portion of the requested fees.

Nancy also requests Ed pay $6000.00 in appellate attorney fees. Appellate attorney fees are awarded upon our discretion and are not a matter of right. *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). When considering whether to exercise our discretion, "we consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *McDermott*, 827 N.W.2d at 687 (quoting *Okland*, 699 N.W.2d at 270). Given Nancy's significant need and Ed's relative superior ability to pay, we award Nancy appellate attorney fees in an amount to be determined by the district court on remand but not to exceed $6000.00. Costs on appeal are taxed to Ed.

### III.

In conclusion, the parties' premarital agreement is invalid. We modify the property settlement and award Nancy an equalization payment of $145,929.92, with credit for any spousal support already paid. We eliminate the district court's award of spousal support. We affirm the district court's denial of Nancy's contempt citation. We affirm the district court's award of trial attorney fees, and we remand to the district court to determine the appellate attorney fee award not to exceed $6000.00.

**AFFIRMED AS MODIFIED AND REMANDED.**

Doyle, J., concurs; Danilson, C.J., concurs specially.

**DANILSON, Chief Judge** (concurring specially).

I concur in the result; however, I part ways with the majority's reasoning. Suffice it to say, Nancy has a need for spousal support but Ed has lost money in the farm operations—even after deducting depreciation—for the past eleven years (2004–2015) and he has no ability to pay spousal support. As the district court noted, "Without Nancy's contributions, the farm would have been lost." There is only one reasonable alternative available to the parties, which is to discontinue the farm operation before the bank forecloses on the real estate or exercises any other lien-holder rights it may have on the farm equipment. However, I agree Ed should not be forced to sell the farmland if he can somehow make the financial arrangements to pay an equalization payment. It may be possible, for example, for Ed to sell his farm equipment and cash-rent the tillable farm ground. Although there may be tax consequences incurred by Ed, the majority's equalization payment is equitable in light of the $36,000 Nancy brought into the marriage from her house proceeds. As observed by the district court, all of the $36,000 "went into the parties' living expenses, freeing money to be put in farm expansion and debt."