# IN THE COURT OF APPEALS OF IOWA

No. 20-1311
Filed September 1, 2021

**IN RE THE MARRIAGE OF KENNETH RAY CRANE
AND JERRILYN JEAN CRANE**

**Upon the Petition of
KENNETH RAY CRANE,**
        Petitioner-Appellant/Cross-Appellee,

**And Concerning
JERRILYN JEAN CRANE,**
        Respondent-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Clayton County, Alan T. Heavens,

Judge.

        In this second modification action, the parties appeal the district court ruling

on spousal-support issues and request a review of the contempt ruling related to

payment of debts and spousal support.  **WRIT ANNULLED; AFFIRMED ON**

**BOTH APPEALS.**

        Stephen Babe of Cordell Law, LLP, Des Moines, for appellant and cross-

appellee.

        Kevin C. Rigdon of Howes Law Firm, P.C., Cedar Rapids, for appellee and

cross-appellant.

        Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

Third time is a charm, as the saying goes. Kenneth Crane hopes that this time his spousal-support obligation terminates. Starting in 2014, Kenneth petitioned for a dissolution of his marriage with Jerrilyn Crane, and the relationship deteriorated from there, resulting in several court battles over financial obligations. Kenneth sought a modification of the spousal-support obligation in 2017. Now, after a trial in August 2020, the parties appeal and the issues fall into two main categories. First, we resolve the modification dispute over the past and future installments of Jerrilyn's spousal support. Second, we address Kenneth's challenge to the district court's contempt of court findings against Kenneth.[1] Then we review each party's request for appellate attorney fees.

### Relevant Facts and Proceedings.

The district court dissolved the marriage of Kenneth and Jerrilyn on February 26, 2016.[2] Because the parties' marriage lasted forty-two years and

---

[1] Upon motion, our supreme court allowed Kenneth's appeal of the contempt to be treated as a petition for writ of certiorari. We grant the petition and address the merits with this opinion. *See Giles v. State*, 511 N.W.2d 622, 625 n.2 (Iowa 1994) ("Unlike a direct appeal . . . a petition for writ of certiorari may be granted or denied at the discretion of the court."); *see also Crowell v. State Pub. Def.*, 845 N.W.2d 676, 682 (Iowa 2014) ("A writ of certiorari is limited to triggering review of the acts of an inferior tribunal on the basis the inferior tribunal exceeded its jurisdiction or otherwise acted illegally. Our power to review lower court actions by issuing writs of certiorari is discretionary. Once this court exercises its discretionary power to grant certiorari, we engage in review of the action of the inferior tribunal and either sustain or annul it. No other relief may be granted." (citations omitted)).

[2] The procedural history shows several applications for rule to show cause by both parties. In July 2016, the district court found Jerrilyn in contempt of court for her failure to transfer the Ford F-150 truck. Then in March 2017, Jerrilyn applied for a rule to show cause hearing citing Kenneth's failure to pay spousal support, to sign the quitclaim deed, and to pay the One Main Financial debt obligation. Next, in May 2018, Jerrilyn applied again for a contempt ruling to address Kenneth's failure to pay her spousal support. These matters were all resolved. Finally we have the

Jerrilyn's earning potential was lower than Kenneth's income, the district court awarded her spousal support.[3] The decree provided:

> Kenneth shall pay spousal support to Jerilyn[4] in the amount of $1500.00 per month commencing on the 1st day of March, 2016 and payable each month thereafter until Jerilyn attains the age of 65 and becomes eligible for social security benefits. That amount of support should allow her to continue working and meeting her monthly bills of roughly $3000.00. The court further finds Kenneth should be able to pay that amount and still remain self supporting. *Spousal support shall be subject to recalculation upon Jerilyn attaining 65, depending upon the social security benefits available to Kenneth and those available to Jerilyn.* Spousal support may cease, continue or be reduced depending upon review at that time. The court is in no position to forecast the financial position of these parties when they reach retirement in order to calculate future spousal support.

(Emphasis added). Both parties appealed the district court's determination of spousal support under the decree along with other issues. *In re Marriage of Crane*, No. 16-0403, 2017 WL 1735636, at *2–3 (Iowa Ct. App. May 3, 2017). On appeal from the dissolution trial, our court reduced the spousal award to $1000 per month until Jerrilyn reached age sixty-five and "[i]n all other respects, we affirm[ed] the award of spousal support." *Id.* at *3. Nearly four months after procedendo issued in May 2017, Kenneth petitioned to modify the decree, citing dire financial circumstances. His end goal was to modify the decree to terminate the spousal-support obligation. But, in the March 2018 order, the district court denied the

---

subject of this appeal, the application for rule to show cause filed in September 2019, again addressing delinquent spousal support but also relating to a bank debt.

[3] Jerrilyn was sixty-two at the time of the dissolution of marriage trial, and Kenneth was sixty-three years old. She had been a stay-at-home mom and kept the books for Kenneth's trucking company. The district court attributed to her a net income of $700 biweekly from her job as a CNA. Kenneth's income ranged from about $20,000 to $39,000 per year.

[4] Jerrilyn is also referred to as Jerilyn or Jeri in this record, but we prefer to address her with the formal version shown in the appellate caption.

modification, noting Kenneth failed to prove a material and substantial change in circumstances. Without referencing the current earnings of either party, the district court determined Kenneth purposefully decreased his earnings by downsizing his trucking operation while entering a new relationship and adding a new baby to his life.

In September 2019, Jerrilyn applied for rule to show cause why Kenneth should not be found in contempt of court for failing to pay a marital bank debt he was assigned in the decree and to pay delinquent spousal-support installments. Before a hearing was held on the application, in January 2020, Kenneth again petitioned to modify the decree. He alleged a substantial change in circumstances because both parties were now eligible for social security benefits and the decree granted the right to review and recalculate his spousal support once Jerrilyn turned sixty-five years old. He noted she was sixty-six years old and he was now sixty-seven years old. Jerrilyn denied that there were substantial changes in circumstances since 2018.

In August 2020, the district court found Kenneth proved changed circumstances and terminated the spousal-support obligation to Jerrilyn. As an aside, the district court noted "some question [as to] whether a substantial change in circumstances was necessary to modify the spousal support award in this case as the Decree states that spousal support shall be recalculated when [Jerrilyn] turned 65." To arrive at its conclusion in the second modification action, the district court reasoned:

> The trial court for the initial Decree, the Court of Appeals, and the trial court for the first modification action all determined that Jeri had a need for spousal support. The record supports these

conclusions, as Jeri had approximately $1,300 more in monthly expenses than monthly income and was taking out loans to pay her mortgage and litigation fee bills as recently as the last modification trial in 2018. Jeri's financial situation has improved significantly since then.

Jeri now has approximately $800 more in monthly income than monthly expenses without any spousal support from Ken. Jeri is financially self-supporting and that is a substantial, material, and unexpected change in circumstances. In the meantime, Ken's physical, mental, and financial health has deteriorated faster than would normally be expected for someone his age.

Ken and Jeri would each like to retire or work substantially less and both are at a normal retirement age. However, if Ken stops working he won't be able to pay spousal support; and if Jeri stops working she may again face a need for spousal support. Put another way, if either Ken or Jeri retires or semi-retires, there is a high likelihood of more litigation as long as each party's income is linked to the other's income via spousal support.

Kenneth asked for spousal support to be terminated retroactive to the date of his filing, but the district court refused and terminated it effective the first due date following the order, September 1, 2020.

Then, addressing the contempt application of Jerrilyn, the district court found Kenneth in contempt of the court orders based on this analysis:

Turning to the present case, there is no dispute that Ken failed to pay $1,000 in spousal support that the Decree required him to pay for the 13 months starting August 2019 and ending August 2020. As stated above, his spousal support obligations cannot be retroactively decreased. There is also no dispute that Ken failed to pay the debt associated with Jeri's residence ("One Main debt"[5]), causing Jeri to take out a second mortgage in order to avoid foreclosure.

Finding there was no excuse for the failure to pay, the district court ordered Kenneth to pay $350 biweekly until his delinquent obligations were paid in full.

Both parties filed motions to enlarge; Kenneth's motion was denied, and the district

---

[5] The district court confused this debt with the Farmers' State Savings Bank mortgage debt against Jerrilyn's home.

court clarified for Jerrilyn the extent of the delinquent obligations to be paid by Kenneth. Each party was to pay their own attorney fees. After filing motions to reconsider, now both parties have appealed the district court rulings. Kenneth disputes the contempt finding and whether termination of the spousal support should have been retroactive. Jerrilyn's focus on appeal addresses termination of spousal support. Both request appellate attorney fees.

**Scope of Review.**

We review the district court's decision modifying the terms of a marriage dissolution decree de novo. *In re Marriage of Johnson,* 781 N.W.2d 553, 554 (Iowa 2010). We will not disturb the trial court's conclusions "unless there has been a failure to do equity." *In re Marriage of Wessels,* 542 N.W.2d 486, 490 (Iowa 1995).

Our review of a certiorari action is for correction of legal error. *Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007). "When the court's findings of fact are not supported by substantial evidence, or when the court has not applied the law properly, an illegality exists." *Id.* Substantial evidence is evidence that would convince a rational trier of fact. *See In re Marriage of Jacobo,* 526 N.W.2d 859, 866 (Iowa 1995). We are not bound by the district court's conclusions of law and "exercise unfettered review of the court's application of the law." *Id.*

Finally, we review a district court's decision on attorney fees for abuse of discretion. *See In re Marriage of Goodwin*, 606 N.W.2d 315, 324 (Iowa 2000).

**Analysis.**

**Modification of Spousal Support.**

We begin with Jerrilyn's position and note that Kenneth had not paid spousal support to Jerrilyn since August 2019. First, she argues Kenneth failed to

prove a substantial change in circumstances since the 2018 modification. The party seeking modification bears the burden of establishing by a preponderance of the evidence the substantial change in circumstances. *In re Marriage of Michael*, 839 N.W.2d 630, 636 (Iowa 2013). The substantial change must be permanent or continuous, not temporary in nature. *Id.* Jerrilyn argues Kenneth is singing the same song he sang in his last unsuccessful modification attempt. But the decree offered the parties the choice of recalculating the spousal support once the social security benefits for each party was known. A proper consideration in a modification action is the obligee spouse's ability for self-support. *Id.* Now both parties receive social security benefits, yet neither has retired. Jerrilyn drew her benefits for the first time in February 2019. The appropriate time to modify spousal support awards is when the factors can be reassessed at or near the time of retirement. *See In re Marriage of Gust*, 858 N.W.2d 402, 418 (Iowa 2015) (holding factors properly considered at the time the initial spousal support award is determined—such as changes in resources, changes in medical expenses, changes in health, and possible changes in earning capacity—are appropriately raised in a modification when a request is made to reduce or terminate the obligation).

Still, instead of an automatic review of the spousal support, the district court found changed circumstances since the 2018 modification. Kenneth's poor health condition and his increased debt load, including a significant child-support obligation, were reasons given to modify. "Although we make our own findings of fact, 'when considering the credibility of witnesses, the court gives weight to the findings of the trial court' even though we are not bound by them." *In re Marriage*

*of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015) (citation omitted). The district court described Kenneth's "physical, mental, and financial health [as deteriorating] faster than normally would be expected for someone his age" and found he is unlikely to ever become "financially solvent given his age, health, and earning capacity." In contrast, Jerrilyn's financial situation improved since 2018 because of increased earnings from work and her newly accessed social security benefits.[6] Although the decree invited a reassessment of the spousal support once social security benefits were established, we agree with the district court that Kenneth proved a substantial change in circumstances supporting the modification of the spousal-support obligation.

While Kenneth agrees with the district court's ruling terminating spousal support, he advocates for a retroactive, February 2019 termination date for the spousal support instead of September 2020. We agree with the district court that, under long-standing precedent, the spousal support cannot be modified retroactively. *See Johnson,* 781 N.W.2d at 559 (noting there is no provision in the Iowa Code dealing with the retroactive modification of alimony); *In re Marriage of Harvey,* 466 N.W.2d 916, 918–19 (Iowa 1991) (holding alimony should terminate as of the date of the modification decree); *In re Marriage of Harvey,* 393 N.W.2d 312, 314 (Iowa 1986) (recognizing a trial court cannot terminate alimony payments that accrue prior to the date the modification order was entered); *In re Marriage of Bonnette*, 431 N.W.2d 1, 5 (Iowa Ct. App. 1988) (holding the trial court acted

---

[6] In 2019, Jerrilyn reported income of $45,896 in wages and eleven months of social security benefits totaling $8310. That same year, Kenneth reported wages of $33,726, corporate income of $1313, and social security benefits of $14,469.

properly when it terminated alimony payments prospectively from the date of the filing of its opinion); *see also Wessels*, 542 N.W.2d at 490 ("Retroactive modification is inappropriate . . . when the level of alimony is decreased or terminated."). Kenneth crafts an argument that the decree "did not provide [Jerrilyn] the 'right' to have spousal support after she turned 65 years old and became eligible for social security benefits." He also argues that, on the appeal from the decree, a panel of this court ruled the spousal support would terminate when Jerrilyn could access social security benefits at age sixty-five.[7] *See Crane,* 2017 WL 1735636, at *2. All of these arguments are a tortured reading of the decree and the earlier decision of our court. In the decree, the district court afforded an option to recalculate support "*depending upon the social security benefits available to Kenneth and those available to* [*Jerrilyn*]." (Emphasis added). In the ruling on the appeal from the decree, the spousal support was reduced, but the court affirmed the spousal support award "[*i*]*n all other respects.*" *Crane,* 2017 WL 1735636, at *3 (emphasis added). Thus, as it did here, the district court was still required to determine if the continued spousal support award was appropriate after reviewing the social security situation.

Having considered all arguments, we affirm the district court ruling terminating the spousal support as of September 2020.

---

[7] We agree with Jerrilyn that Kenneth did not preserve this issue for appeal because it was raised only in the appellate briefing—not before the district court. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

**Contempt of Court Finding.**

Kenneth first asserts the contempt request surrounding the One Main Financial debt was withdrawn from consideration so he should not be in contempt for failing to pay that debt. Counsels' exchange with the court at trial seems to support his contention:

> JERRILYN'S COUNSEL: . . . I do believe that the contempt application may have mentioned the One Main Financial, but I think that there might have been a different loan mentioned in that contempt action that was really at issue, because the loan issue was one that was secured by a second mortgage on the home; and I question whether that One Main Financial obligation was actually that one secured by the home. So that's just—I think big picture, yes, absolutely. I—I do know that the application for the contempt—to initiate contempt proceedings did mention the One Main Financial obligation in it. So that was really, I think, just a error, a drafting error, on my part.
> . . . .
> KENNETH'S COUNSEL: That's correct. The main debt that's being addressed today is at Farmers Savings Bank, and that did have the marital home as collateral.
> JERRILYN'S COUNSEL: Right.
> THE COURT: Very good. Thank you for that clarification.

The trial record focused on the debt Kenneth was to pay to Farmers' State Savings Bank that involved a mortgage on the marital home, but the district court characterized that debt as the One Main Financial debt. No testimony specifically related to repayment of the One Main Financial debt, but it was discussed as an obligation Kenneth owed. Still, in a ruling after post-trial motions, the district court clarified the wage withholding order would continue until "all obligations set forth in the Decree are paid in full." The decree required Kenneth to pay his Ken Crane Trucking debt payable to Farmers' State Savings Bank as well as the One Main Financial obligation. As for the Farmers' State Saving Bank debt, he has not made any recent payments, while Jerrilyn paid $31,500 towards that debt to save her

home from foreclosure. She now holds a second mortgage with Community Bank to secure that payment.

On his side, Kenneth characterizes himself as "indigent." He points to his stated negative net worth of $168,154.84; the $2500 wage withholding occurring for child support; and the debt obligations he has to Farmers' State Savings Bank, One Main Financial, and to the Internal Revenue Service. He further asserts his failure to pay Jerrilyn was not willful.

A contempt proceeding is quasi-criminal in nature, and each element must be proved beyond a reasonable doubt. *See In re Marriage of Ruden*, 509 N.W.2d 494, 496 (Iowa Ct. App. 1993). "A party alleging contempt has the burden to prove the contemner had a duty to obey a court order and willfully failed to perform that duty." *Ary*, 735 N.W.2d at 624. "If the party alleging contempt can show a violation of a court order, the burden shifts to the alleged contemner to produce evidence suggesting the violation was not willful." *Id.* Here, Kenneth may show that a failure to comply was not willful by showing that the he was unable to perform the act ordered. *See Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 678 (Iowa 1998). "When a party claims an inability to pay, the test is whether there is any property out of which payment can be made, not merely whether the party claiming an inability to pay is presently working or has current funds or cash on hand." *Ary*, 735 N.W.2d at 625.

> [A] finding of disobedience pursued "willfully" requires evidence of conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not.

*Id.* (citation omitted).

Given this record, we affirm the district court ruling. There is substantial evidence to support the district court's ruling. *See Rea v. Iowa Dist. Ct.*, 877 N.W.2d 869, 870 (Iowa Ct. App. 2016). Here, the district court found Kenneth gave "his many other debts priority over his Court-ordered obligations in this case." Kenneth made no attempts to pay his spousal support after August 2019. Kenneth failed to make even minimal payments to address this obligation. Then, although the banker from Farmers' State Savings Bank made calls to Kenneth about the mortgage debt, Kenneth ignored the calls. Recognizing his failure to pay would lead to the loss of the home, we find Kenneth's lack of response to be willful. *See Bowlin v. Swim*, No. 19-1021, 2020 WL 2988537, at *8 (Iowa Ct. App. June 3, 2020) (finding contemner "was not free to simply not pay the amount ordered and do nothing.").

We find the assignment of $350 biweekly from Kenneth's paycheck to be appropriate as a means of securing payment on all of the court-ordered obligations, and we will not disturb all of the conditions imposed in the district court contempt ruling.

**Attorney Fees.**

Both parties request appellate attorney fees. We decline to award either party fees. We have considerable discretion in determining whether appellate attorney fees should be awarded. *Michael*, 839 N.W.2d at 639. After considering the parties' respective abilities to pay, whether the party was successful, and whether the party was obliged to defend the district court's decision on appeal, we conclude each party should pay his or her own appellate attorney fees. *Id.*

**Conclusion.**

We annul the writ and affirm the district court ruling as to all issues appealed. We decline the invitation to award appellate attorney fees.

**WRIT ANNULLED; AFFIRMED ON BOTH APPEALS.**