# IN THE SUPREME COURT OF IOWA

No. 66 / 03-2097

Filed July 20, 2007

**WAYLON D. ARY,**

Plaintiff,

vs.

**IOWA DISTRICT COURT
FOR BENTON COUNTY,**

Defendant.

------------------------------------------------------------

**IN RE THE MARRIAGE OF SARAH J.
ARY AND WAYLON D. ARY**

**Upon the Petition of
SARAH J. ARY,**

Appellee,

**And Concerning
WAYLON D. ARY,**

Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Benton County, William L. Thomas, Judge.

A former spouse challenges a district court's contempt finding through a petition for writ of certiorari. **DECISION OF COURT OF APPEALS VACATED; WRIT ANNULLED.**

Waylon D. Ary, pro se, Belle Plaine, for appellant.

Crystal L. Usher, Cedar Rapids, for appellee.

**WIGGINS, Justice.**

The district court held Waylon D. Ary in contempt for violating provisions of his dissolution decree requiring him to make payments to his former spouse, Sarah J. Ary, for his share of the children's uninsured medical and dental costs, a property equalization award, and an attorney's fee award. He challenges the court's contempt finding through a petition for writ of certiorari. Based on our review, we find the court's contempt order is supported by substantial evidence and the court did not abuse its discretion in determining Waylon's punishment for his contempt. Therefore, we annul the writ of certiorari.

## I. Prior Proceedings.

On July 28, 2003, Waylon filed an application for contempt. He alleged his former spouse, Sarah, willfully violated the provisions of their dissolution decree by discouraging visitation with their three children, failing to sign the proper forms allowing him to claim the children as dependants on his tax return, and failing to furnish the children's uninsured medical and dental bills in a timely manner. Waylon requested Sarah be found in contempt and asked the court to require Sarah to facilitate visitation, to release her claim on the dependency exemptions, to provide medical and dental bills in a timely fashion, and assess penalties against her, including, but not limited to, all costs and attorney's fees incurred by him.

Sarah responded by filing an answer to Waylon's application and her own application for contempt against Waylon. In her answer Sarah denied discouraging the children from visiting Waylon. She also alleged at no time had Waylon been eligible for the tax exemption because he was never current on his child support obligation. Sarah further alleged she regularly

provided Waylon with the children's uninsured medical and dental bills, but he did not pay them.

In her application for contempt Sarah alleged Waylon had neglected to pay the children's uninsured medical and dental expenses and one-half of the birth expenses for their youngest child. Sarah also charged Waylon had willfully disobeyed the dissolution decree because he had not paid the property equalization award or the attorney's fee award as required. Sarah requested the court to direct Waylon to pay all medical bills Sarah listed in her application, the property equalization award plus interest, the attorney's fee award plus interest, and for any and all other sanctions the court deemed just and equitable.

After conducting a hearing, the district court dismissed Waylon's application for contempt. Specifically, the district court found Sarah did nothing to interfere with Waylon's relationship with their children. Rather, the court found Waylon's conduct was responsible for the current visitation problems. Additionally, the court determined Sarah was not in contempt for failing to allow Waylon to claim a tax exemption for the children because Waylon conceded he failed to pay for the children's uninsured medical and dental costs.

The district court found the evidence established Waylon was in contempt of court. The court entered judgment in favor of Sarah. In doing so the court reiterated Waylon was required to pay the property equalization award of $6753.05, plus interest at the normal legal rate and the $2000 attorney's fee award. The district court also ordered Waylon to pay $916.88 for the uninsured medical and dental expenses, $304.18 for attorney's fees incurred by Sarah in the contempt proceeding, and all court costs. With respect to the birth expenses for their youngest child, the district court did

not hold Waylon in contempt because the dissolution decree was silent as to these expenses.

The court sentenced Waylon to thirty days in the county jail for his contempt. The court withheld mittimus, giving Waylon an opportunity to purge himself of the contempt by presenting an acceptable payment plan to the court within thirty days of the court's order.

Waylon petitioned this court for a writ of certiorari. We transferred the case to our court of appeals. The writ was sustained in part and annulled in part by the court of appeals. The court of appeals partially sustained the writ because it found "there is no evidence Waylon has the ability to pay the amount due at this time. In fact, the only evidence is that he cannot." The court of appeals partially annulled the writ as to Waylon's claim that Sarah was in contempt of a court order.

Sarah petitioned our court for further review, which we granted.

## II. Issues.

In her petition for further review, Sarah urges the court of appeals erred by sustaining the writ as to Waylon's contempt. When a party asks us to review a decision of the court of appeals, we have discretion to review any issue raised in the original appeal regardless of whether such issue is expressly asserted in an application for further review. *In re Marriage of Ricklefs*, 726 N.W.2d 359, 361-62 (Iowa 2007). In exercising this discretion we will only address: (1) whether the evidence supported the district court finding that Waylon was in contempt; and (2) whether the district court erred in sentencing Waylon to thirty days with the opportunity to purge himself of the contempt if he provided an acceptable payment plan.

## III. Standard of Review.

Certiorari is an action at law; therefore, our review is at law. *Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 678 (Iowa 1998). In our

review of a certiorari action, we can only examine "the jurisdiction of the district court and the legality of its actions." *Id.* When the court's findings of fact are not supported by substantial evidence, or when the court has not applied the law properly, an illegality exists. *Amro v. Iowa Dist. Ct.*, 429 N.W.2d 135, 138 (Iowa 1988). A contemner's sentence is reviewed for an abuse of discretion. *Ickowitz v. Iowa Dist. Ct.*, 452 N.W.2d 446, 452 (Iowa 1990).

**IV. Analysis**.

*A. Contempt.* We have customarily defined contempt as willful disobedience. *McKinley v. Iowa Dist. Ct.*, 542 N.W.2d 822, 824 (Iowa 1996). A party alleging contempt has the burden to prove the contemner had a duty to obey a court order and willfully failed to perform that duty. *Christensen*, 578 N.W.2d at 678. If the party alleging contempt can show a violation of a court order, the burden shifts to the alleged contemner to produce evidence suggesting the violation was not willful. *Id.* However, the person alleging contempt retains the burden of proof to establish willfulness beyond a reasonable doubt because of the quasi-criminal nature of the proceeding. *Ervin v. Iowa Dist. Ct.*, 495 N.W.2d 742, 745 (Iowa 1993). We have said,

> a finding of disobedience pursued "willfully" requires evidence of conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not.

*Lutz v. Darbyshire*, 297 N.W.2d 349, 353 (Iowa 1980), *overruled on other grounds by Phillips v. Iowa Dist. Ct.*, 380 N.W.2d 706, 707, 709 (Iowa 1986). A failure to follow a court order is not willful if a contemner shows the order was indefinite or that the contemner was unable to comply with the order. *Christensen*, 578 N.W.2d at 678.

*B. Whether substantial evidence supports the district court finding that Waylon was in contempt.* Because a finding of contempt must be established by proof beyond a reasonable doubt, substantial evidence sufficient to support a finding of contempt is evidence that could convince a rational trier of fact that the alleged contemner is guilty of contempt beyond a reasonable doubt. *In re Marriage of Jacobo*, 526 N.W.2d 859, 866 (Iowa 1995); *see also Phillips*, 380 N.W.2d at 709 (pronouncing the requirement of proof beyond a reasonable doubt to establish contempt rather than the previously articulated clear and satisfactory standard).

The parties' dissolution decree required Waylon to pay a $6753.05 property equalization award, $2000 toward Sarah's attorney's fees, and one-half of the children's uninsured medical and dental costs.

Waylon argues he did not have to pay the property equalization award because the mortgage on the house he was awarded was foreclosed and he lost approximately $500 in equity as a result. Paragraph 11 of the decree reconciled the disparity in the property distribution between Waylon and Sarah. It provided:

> 11. Reconciliation: In the paragraphs above, the Petitioner is awarded $3,179.11 in property. The Respondent is awarded $16,685.20 in property. One-half of the difference is $6,753.05. The Respondent shall pay to the Petitioner the sum of $6,753.05 to equalize the property settlement within 60 days from the date of this Decree. This amount shall carry interest at the normal legal rate and is established as a judicial lien against the real estate awarded to the Respondent.

Nowhere in this paragraph or in any other part of the decree is Waylon's obligation to pay the property equalization award contingent on the proceeds from the sale of any property.

Waylon also argues he did not have to pay Sarah's attorney's fees because he never received a bill from Sarah's attorney. Paragraph 12 of the

decree related to Waylon's obligation to pay a portion of Sarah's attorney's fees. It provided: "The Respondent shall pay to the Petitioner's attorney the sum of $2,000. The Respondent shall be responsible for the balance of his attorney fees. The Petitioner shall be responsible for any balance due her attorney."

The attorney's fee award was not dependant on Waylon receiving a bill. He could have paid Sarah's attorney or the clerk of court to fulfill this obligation under the decree. It is clear Waylon understood this because he testified he knew he could have paid the amounts owed under the decree to the clerk of court.

Waylon further argues he did not have to pay his half of the uninsured medical and dental costs because he did not receive bills for them. Our review of the record not only supports that he received these bills, but also that he acknowledged receipt of these bills.

Finally, Waylon argues he cannot be found in contempt because any failure on his part to pay the $6753.05 property equalization award, $2000 toward Sarah's attorney's fees, and one-half of the uninsured medical and dental costs was not willful due to his inability to pay. When a party claims an inability to pay, the test is whether there is any property out of which payment can be made, not merely whether the party claiming an inability to pay is presently working or has current funds or cash on hand. *Christensen,* 578 N.W.2d at 678-79.

The record provides substantial evidence for a rational trier of fact to find Waylon had an ability to pay because he was working, making a good wage, making payments on his vehicle, and he testified he suffered only a $500 loss in equity from the foreclosure of the mortgage. The fact that Waylon lived with his parents does not, in and of itself, evidence financial

hardship. In fact, a rational trier of fact could reasonably conclude Waylon had a greater ability to pay because he had no housing costs.

From the entry of the dissolution decree on May 5, 1997, until the time of the contempt hearing on October 30, 2003, Waylon was employed. The dissolution decree ordered Waylon to pay $648.38 a month as support for the three children. On June 20, 2001, an order for income withholding was filed against Waylon, and in addition to the $648.38 in child support in each month, it was ordered that $129.67 was to be withheld each month to pay for delinquent support, totaling $3034.88. Waylon attempted to quash this order for delinquent support, but after learning in order to qualify for a hardship exemption his income would have to be two-hundred percent below the poverty level, he voluntarily dismissed his motion to quash.

On October 3, 2002, Waylon stopped paying the additional $129.67 and only the $648.38 was withheld each month from his paycheck. Once the court stopped withholding the extra payments, he did not make any payments on any of the other items he was ordered to pay. There is no reason in the record to show why Waylon could not have used these funds toward any of his other payment obligations.

Additionally, at the time of the contempt hearing, Waylon testified he was working a forty-hour work-week, at $16.17 an hour. Not considering any overtime wages, Waylon's gross income was $33,633.60. Waylon lived with his parents and the record does not provide whether he was paying for this housing arrangement. He did, however, indicate he was living with his parents to save money. Waylon testified he made a monthly car payment for "a hundred and something a month" and he also recently purchased a Jaguar for $500, intending to purchase parts and fix up the car. He also testified he lost $500 in equity due to the foreclosure of the mortgage. No

other evidence was presented regarding Waylon's present expenses, assets, or savings. Importantly, at the hearing Waylon testified he had the ability to pay his share of the uninsured medical and dental bills presented to him in 2001 by Sarah's attorney. Further, even though Waylon testified he was "ready to pay" the uninsured medical expenses, from 2001 forward Waylon admittedly did not pay any medical or dental bills presented to him.

Finally, Waylon does not really claim he had an inability to pay. In his brief he claims "[he] was forced to take an unwanted house at an over-estimated value and was not able to make his property and support payments." Simply because a party is dissatisfied with the dissolution decree does not excuse compliance with its terms. *McKinley*, 542 N.W.2d at 825. Waylon cannot pick and choose which obligations he can and cannot pay based on his evaluation of the "fairness" of the decree. *See In re Marriage of McKenzie*, 709 N.W.2d 528, 534 (Iowa 2006) (finding the non-custodial parent is "not free to plan his future without regard to his obligation to his former wife and child" and his "desire for self-fulfillment is outweighed by the pre-existing duty he had to his former spouse to provide adequate support for his minor child").

Accordingly, substantial evidence supports the district court finding Waylon in contempt for failing to pay the $6753.05 property equalization award, $2000 toward Sarah's attorney's fees, and one-half of the unpaid medical and dental costs.

*C. Whether the district court's punishment for contempt was proper.* The Code provides:

> If a person against whom a temporary order or final decree has been entered willfully disobeys the order or decree, the person may be cited and punished by the court for contempt and be committed to the county jail for a period of time not to exceed thirty days for each offense.

Iowa Code § 598.23(1) (2003). The court's power to order a person committed to the county jail for a period of time includes the power to withhold commitment conditioned on compliance with a prescribed condition. *Christensen*, 578 N.W.2d at 680. The attached condition must be connected with the subject of the contempt. *Callenius v. Blair*, 309 N.W.2d 415, 419 (Iowa 1981), *overruled on other grounds by Phillips*, 380 N.W.2d at 707, 709. The district court's commitment order complied with all of these requirements. Thus, the commitment order was not illegal.

Waylon argues even if we affirm that he is in contempt, this court should overturn his thirty-day sentence and instead implement alternative punishment. The Code provides a court can withhold income as an alternative to committing Waylon to the county jail. Iowa Code § 598.23(2)(*a*). However, we are not convinced the district court abused its discretion by committing Waylon to the county jail and withholding mittimus conditioned on Waylon purging himself of the contempt by presenting an acceptable payment plan to the court. Therefore, we will not disturb the punishment imposed on Waylon by the district court.

**V. Disposition.**

We vacate the decision of the court of appeals, affirm the order of the district court, and annul the writ because substantial evidence supports the district court's finding of contempt, and the district court did not abuse its discretion in imposing its penalty on Waylon for his contempt.

**DECISION OF COURT OF APPEALS VACATED; WRIT ANNULLED.**