# IN THE COURT OF APPEALS OF IOWA

No. 13-1018
Filed August 27, 2014

**PAMELA VANDEL,**
        Plaintiff-Appellant,

**vs.**

**IOWA DISTRICT COURT FOR POLK COUNTY,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Richard G. Blane II,

Judge.


        Pamela Vandel petitioned for a writ of certiorari after the district court

found her in contempt.  **WRIT SUSTAINED.**


        Pamela A. Vandel, Des Moines, appellant pro se.

        Jason Springer, Des Moines, for appellee.


        Considered by Danilson, C.J., and Vogel and Bower, JJ.

**VOGEL, J.**

Pamela Vandel has petitioned for a writ of certiorari after being found in contempt, asserting the district court acted illegally and violated her constitutional rights when it held the contempt hearing without Vandel being served notice of the application for rule to show cause. She further asserts the court erred in finding her in contempt, and that she was prejudiced by the court's requirement she serve as advocate for her client as well as being one of the accused. We conclude that, based on the evidence presented, the district court erred in finding Vandel willfully violated a court order. We therefore sustain the writ of certiorari challenging the court's contempt order.

Vandel represented Nichole Phillips during a dissolution of marriage modification proceeding between Nichole and her former husband, Floyd Phillips. Two applications for rule to show cause were filed against Nichole, one on September 20, 2012, and the second on April 22, 2013. The applications alleged Nichole refused to allow Floyd to visit the parties' minor son, contravening the court's visitation order.

Vandel filed a motion to suspend visitation on April 15, 2013. A hearing was scheduled on the motion, which was continued due to Vandel's medical issues. Another application for rule to show cause was filed on May 13, 2013, alleging both Nichole and Vandel should be held in contempt for violating the court-ordered visitation schedule, specifically claiming that Vandel had advised her client to disregard the court order. Vandel's name does not appear in the caption. Although the Certificate of Service signed by Floyd's attorney declares the application "was served upon all parties," it was not personally served on

either Vandel or Nichole. The case was originally a paper file, but this application was electronically filed. No conversion order was filed alerting the parties that the court was accepting electronically filed documents.

A hearing was conducted from May 20 to May 24, 2013, on the modification, the April 22 application for contempt, and motion to suspend visitation actions. Although there is no order in the record setting the May 13 application for hearing, it was heard along with the earlier contempt action.

During the hearing, the following exchange occurred between Vandel and Nichole:

> Q: Isn't it true, Nichole, that I told you there is a court order in place and you have a risk of violating that order? A: You know what? I don't remember . . . . [Y]ou had told me the judge, you know, did feel that it was okay as far as stopping visitation right now.
> Q: You never saw a court order saying that, did you? A: No.
> Q: And isn't it true that I was concerned about violation of the order or I would not have filed a motion to suspend the visitation? A: Correct. Yes.
> . . . .
> Q: And you know that when you stopped that visitation that you were at risk until we could get before a court? A: I didn't know everything. But, I mean, I was following—I'm paying you, and you're legally—you're my advisor. So I wanted to do everything that you told me, and I was very concerned about [the minor child] also. So, I mean, I was all for it.

During Nichole's cross examination, the following exchange occurred:

> Q: So when was the first time that you did not allow [the minor child] to be with Gene on his visitation? Do you remember that first time when you denied any type of visitation? A: It was just when we had that hearing about Floyd hadn't done his psych eval and DHS was involved, and I was advised to, you know, stop the visitation.
> Q: You were advised by whom? A: My attorney, Pam.
> Q: So she told you to not allow Gene to visit [the minor child]? A: She said because the psych eval's not back and he was supposed to have his done and I had mine done and that DHS was

involved, she thought it was best—for the best interest of [the minor child].

 Q: So two things needed to be accomplished, correct, a psych evaluation and then the report, the findings of the DHS report; correct? A: Right.

 Q: And so she told you to not allow Gene to see [the minor child] because of those two things? A: Correct.

Additionally, Nichole testified about text messages she sent to Floyd stating visitation had been suspended because he had not completed his psychological evaluation, and advising him to talk to his attorney. She then stated her attorney had informed her visitation had ceased because of Floyd's failure to attend the evaluation. These text messages were entered into evidence.

 Following this testimony, the court stated:

 The Court: Ms. Vandel, do you want the opportunity to secure counsel? Ms. Vandel: Excuse me, Your Honor?

 The Court: To secure counsel, legal counsel. According to the testimony, you have procured a violation of a court order which would hold you in contempt. Ms. Vandel: I don't believe that will be necessary, Your Honor, other than Tyler Johnston because he was at the hearing. I don't believe that there's any evidence that the judge ever entered an order stopping visitation or that there is any evidence that I made any statement. In fact, the evidence is quite contradictory.

 The Court: That's not what your client just testified to. Ms. Vandel: I'm sure it's a misunderstanding. But I've never said that, and I've been practicing for 19 years. There's also—

 . . . .

 The Court: I'm just asking if you want the opportunity [to procure counsel]. Ms. Vandel: No.

Additionally, Nichole testified that there were several instances of significant misunderstandings between her and Vandel, and that she believed she had the authority or the right to stop visitation. She also stated that she did not remember whether Vandel advised her there was a court order in place that she would violate if she refused to allow visitation.

During Vandel's testimony, she denied she told Nichole that she should suspend visitation, and, in fact, she informed Nichole there was no legal ground on which Nichole could rely for withholding visitation. Vandel stated:

> I do wish to admit that I said to her that I, as a mother, would be extremely concerned about what is going on, that the DHS was being brought in by the school system. But even if that were true and every allegation in the child protective assessment was true and it was founded, it still would not provide a legal ground to change a court order without getting an order changing it.
>  . . . .
> I believe that Nichole's actions were not intentional or willful. I believe it was a misunderstanding between she and I, and we've had several. But I don't believe it was her flagrant violation of anything. And I believe that she got my motion to suspend visitation and thought it was okay [to deny visitation].

Vandel also informed the court no personal service of the May 13 contempt application was made. She therefore argued service was deficient and the contempt action regarding her should be dismissed. In response, the district court stated, "I consider whatever notice, personal service, was waived by the agreement and consent of the parties to address this." The court further stated, "There is no basis to make an application for court-appointed counsel [for Nichole on the contempt action]. That will be denied."

On May 28, 2013, the district court found nine counts of contempt against Nichole and Vandel, one count for each day visitation was denied. With regard to Vandel, the court stated:

> The Court also finds that on two separate occasions during testimony at this hearing/trial, Petitioner Nichole Phillips, testified that she was specifically counseled by her attorney, Pam Vandel, around mid-April 2013 that she should stop Respondent's visitation with the child because he had not complied with the Court's order requiring him to obtain a psychological assessment and because there was a DHS investigation on Respondent involving his son. The Court finds the Petitioner credible. Further, Ms. Vandel also

filed a Motion to suspend visitation on April 15, 2013, based upon these same grounds.

Based on this reasoning, the court found Vandel aided and abetted Nichole's willful violation of the visitation order, and ordered Vandel to pay $4500 in fines. Vandel appeals through a petition for writ of certiorari. No response was filed on behalf of the defendant-appellee, the Iowa District Court for Polk County.

Because this action arises from a writ of certiorari, our review is at law. *Ary v. Iowa Dist. Court*, 735 N.W.2d 621, 624 (Iowa 2007). A party alleging contempt has the burden to prove the contemner had a duty to obey a court order and willfully failed to perform that duty. *Id.* If the party alleging contempt can show a violation of a court order, the burden shifts to the alleged contemner to produce evidence suggesting the violation was not willful. *Id.* However, the person alleging contempt retains the burden of proof to establish willfulness beyond a reasonable doubt because of the quasi-criminal nature of the proceeding. *Id.* Additionally, "[b]ecause a finding of contempt must be established by proof beyond a reasonable doubt, substantial evidence sufficient to support a finding of contempt is evidence that could convince a rational trier of fact that the alleged contemner is guilty of contempt beyond a reasonable doubt." *Id.* at 624–25.

We do not believe substantial evidence supports a finding of contempt in this case as against Vandel. While we give deference to the trial court's credibility findings, *see State v. Weaver*, 606 N.W.2d 797, 804 (Iowa 2000), the evidence does not establish beyond a reasonable doubt that Vandel willfully violated a court order. As both Vandel and Nichole testified, there were several

instances of misunderstanding between them. Vandel then testified she did not advise Nichole to violate the visitation order, but, rather, filed a motion to suspend visitation. As Vandel noted in her brief, she would have had no reason to file the motion to suspend visitation if she had simply advised Nichole to violate the visitation order.

Furthermore, Nichole's testimony is not consistent. While at times she clearly states Vandel advised her to suspend visitation, at other times she equivocates, testifying she was not sure whether this was Vandel's exact advice. Consequently, substantial evidence does not support the district court's finding Vandel engaged in conduct that was "intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty." *Christensen v. Iowa Dist. Court*, 578 N.W.2d 675, 678 (Iowa 1998). We therefore sustain Vandel's writ of certiorari. Due to this conclusion, we need not address Vandel's other arguments.

**WRIT SUSTAINED.**