# IN THE COURT OF APPEALS OF IOWA

No. 21-1398
Filed February 8, 2023

**STAESHA OUI MARIE FELTON,**
        Plaintiff-Appellant,

**vs.**

**IOWA DISTRICT COURT FOR POLK COUNTY,**
        Defendant-Appellee.
_____

        Certiorari to the Iowa District Court for Polk County, Paul D. Scott, Judge.


        On certiorari, a mother challenges a district court ruling finding her in contempt. **WRIT ANNULLED.**


        Joseph G. Bertogli, Des Moines, for appellant.

        Raymond V. Wilson, Ankeny, self-represented appellee.


        Considered by Ahlers, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

The district court found Staesha Felton in contempt of court for depriving Raymond (Ray) Wilson of parenting time with their two children and acting contrary to her duties as a joint legal custodian. The court ruled: "Allowing a 12-year-old and a 7-year-old to dictate whether they want to go to their father's home is unacceptable." On certiorari, Staesha challenges the court's contempt findings and award of attorney fees to Ray. Because we find substantial evidence that Staesha willfully violated the decree, we annul the writ of certiorari. We also reject Staesha's challenge to the district court's award of trial attorney fees to Ray, and we deny each party's request for appellate attorney fees.

## I.    Background Facts and Proceedings

Ray and Staesha's thirteen-year marriage was dissolved by stipulated decree in March 2020. Their three children—born in 2003, 2007, and 2013[1]— were placed into their joint legal custody. Staesha had physical care of the oldest child subject to Ray's liberal visitation, while the two younger children were placed in the parties' joint physical care on an alternating week schedule, with a mid-week visit for the non-exercising parent on Wednesdays from 5:00 p.m. to 8:00 p.m. The decree specified that the parties had to support the other's disciplinary actions, "foster feelings of affection and respect between the minor child[ren] and the other party," and take no action that "may estrange the minor child[ren] from the other party or impair their high regard for the other party."

---

[1] The oldest child reached the age of majority in June 2021.

One year later, the two younger children began refusing to go to Ray's house during his parenting time. Ray filed a pro se contempt application in June 2021,[2] which was amended the next month by an attorney he retained to represent him. The amended application alleged that Staesha (1) "refus[ed] to allow [him] to exercise his parenting time consistently since February of 2021," (2) "refused to act to foster feelings of affections and respect between the minor children and" him, (3) "engaged in actions with the intent to estrange the minor children from" him, (4) "engaged in actions with the intent to impair the children's high regard for" him, (5) "failed to support [his] right to love and discipline the children," (6) disallowed communication between him and the children, and (7) failed to include him in decisions about the children.

A hearing on the contempt application was held over three days in August. The evidence shows that the breakdown in Ray's relationship with his children began in early 2021, when he started taking away their electronic devices to discipline them. Ray testified this began because the children were becoming increasingly disrespectful to him and his wife. He also did not allow the children to have their electronics after their 8:30 p.m. bedtime. The children didn't like these rules and, shortly after they were instituted, quit going over to Ray's house. Staesha, on the other hand, testified the children's emotional and attitude issues toward Ray began when the decree was entered. She believed this was because

---

[2] A few weeks earlier, Staesha filed a petition seeking modification of physical care of the two younger children from joint physical care to physical care with her. She alleged Ray "refused to communicate with her on co-parenting issues," deprived the children of contacting her during his parenting time, limited the children's participation in activities during his parenting time, and "utiliz[ed] improper forms of discipline and denial of privileges."

Ray directed all of his attention to his new wife and the children felt Ray didn't love them anymore.

The first issue with parenting time appears to have been on March 24, when Staesha kept the children following her Wednesday visit under the decree. Until then, the parties had agreed the children could spend the night with Staesha the evening of her mid-week visit. But on March 10, as things were deteriorating between the parties, Ray told Staesha in a text message that he wanted the children returned on Wednesdays at 8:00 p.m. as required by the decree. Staesha responded, "Nope I won't be. . . . And we have been doing it for a year so take me to court." When her next Wednesday visit rolled around, Staesha began texting Ray that the "kids don't want to come back to your house they don't understand why they have to as you've been allowing it for 2 years." After Ray didn't respond, Staesha continued, "I would like to discuss this matter on the phone as they are here and you can explain to them why you're taking away their time with me . . . for no reason." By 8:30 p.m., with no answer from Ray, Staesha texted him that she was going to get the children ready for bed. Ray's only response was, "I filed a police report for my missing children. I really wish they were here."

Around the same time, Staesha began texting Ray how much the children dislike being with him. In one message, Staesha told him that "the kids hate you . . . . They hate your house. They beg not to go."[3] Yet, Staesha repeatedly said she supported the children's relationships with Ray, as she did in her testimony at the contempt hearing. But text messages between Staesha and the

---

[3] This is just one example among many of Staesha telling Ray that the children did not like going to his home.

older child tell a different story. In those messages, Staesha criticized Ray's new wife, talked with the child about "running away" from Ray's home, described the situation at Ray's as "worse and worse," and encouraged the child to lie to Ray and "[e]rase these texts" about it. In one exchange, the child texted Staesha about a conversation she overheard between Ray and his wife. Staesha responded, "She crazy," and then later on asked the child, "Anything else to report? Lol."

Things got worse in April. Early that month, the older child began outright refusing to go to Ray's, and the younger child followed suit soon after. The boiling point was on April 18 when, according to Ray, Staesha started a confrontation in front of the children during a custody exchange and stated "what's going on with the girls isn't her fault and that it's [Ray's] fault." Ray said that Staesha and her mother threatened and insulted Ray's wife during this exchange and the children were distraught. On his way home with the children, the older child got out of the car at a stop sign and ran back to Staesha's house. Staesha then showed up at Ray's with the older child in tow, demanded her belongings, and refused to leave until law enforcement arrived. She texted Ray later that the older child "will not be coming back to your home for her own safety for the time being."

After that, with a few exceptions, the children did not go to Ray's for his parenting time from April through the time of the contempt hearing in early August. During this time, Ray continued to go to Staesha's home to pick up the children at the start of his parenting time, but they would not go out to his car. Staesha testified she packed the children's bags and told them they needed to go with Ray, but she would not force them or give them any consequences when they refused. Staesha contended that was all she needed to do, testifying it was up to Ray "to

come up and talk to the girls so they will leave." But Ray testified going up to the house was only a potential for more conflict between him and Staesha in front of the children, which he wanted to avoid.

Messaging between the parties in a parenting app[4] shows Ray often objected to the children not coming to his home for his parenting time. Staesha usually responded by claiming that she tells the children they need to go, but she is "at a loss as to what [she] is supposed to do" when they refuse. She also expressed her concern to Ray that the children suffer when they are with him and that he is "hindering their well being." Once, when talking about the older child, Staesha stated: "I have no valid reasoning to tell her as to why she has to go . . . ." Some of her messages show she agrees with the children when they don't want to go to Ray's, for example: "As a mother it is my duty to protect my children and that is what I am doing."

In its ruling, the court found Ray showed "beyond a reasonable doubt that Staesha withheld [the children] from him thereby depriving him of his parenting time from approximately March through August 2021." The court specified Staesha does not force the children to go and her "refus[al] to have the children

---

[4] Once the parents began using this app, it is clear Staesha's messages were written with a court proceeding in mind. In one, she even states: "I write this knowing the court will read it because it's detrimental for anyone involved to understand that your children are emotionally traumatized being with you." With court in mind, Staesha tries to portray herself in messages as a model co-parent while, at the same time, belittling Ray, portraying him in a negative light, and attempting to bait him into conflict. From Ray's responses, though his frustration is clear, his main goal seems to be to avoid conflict with Staesha by having as little contact as possible.

ready and out the door for their time with Ray is a violation of the Decree." The court also explained:

> Allowing a 12-year-old and a 7-year-old to dictate whether they go to their father's home is unacceptable. Further, . . . Staesha has undermined the relationship between Ray and the children, enhancing an environment where Ray is disrespected and the children are allowed to choose to stay at Staesha's home rather than go to Ray's home. She condones the children's refusal to go Ray's.

The court found Staesha's actions were intentional, deliberate, and willful.

The court also found Staesha "failed, neglected, or refused to act to foster feelings of affection and respect between the minor children and Ray," "engaged in actions with the intent to estrange the minor children from Ray," and "engaged in actions with the intent to impair the children's high regard for Ray." The court highlighted the text messages between Staesha and the older child, reasoning:

> It is clear that Staesha is fueling whatever issues there may be between Ray and the minor children. In addition, keeping the children from Ray during his visitation time is further evidence that Staesha has engaged in actions that are intended to estrange the children from Ray, and impair the children's high regard for him. Ray has also proven beyond a reasonable doubt that Staesha has failed to support his right to love and discipline the children, failed to support disciplinary actions taken by him, and that she has continually discussed in the presence of the children disagreements about the child-rearing actions, schedules, or other matters involving the children . . . .

All-in-all, the court found Staesha guilty of contempt on five of the counts alleged and ordered her to serve terms of incarceration of thirty days on each count, mittimus being withheld pending compliance with the decree.[5] The court also ordered Staesha to pay $4000 of Ray's attorney fees. Staesha sought

---

[5] The court ordered three counts to be served concurrent with one another, and consecutive to the first count, with all counts running consecutive to the final count, for a total term of incarceration of ninety days.

appellate jurisdiction through a petition for writ of certiorari, and her petition was granted.

## II.      Standard of Review

"Certiorari is an action at law; therefore, our review is at law." *Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007). "[W]e may examine only the jurisdiction of the district court and the legality of its actions." *Reis v. Iowa Dist. Ct.*, 787 N.W.2d 61, 66 (Iowa 2010) (citation omitted).

> The district court acts illegally when the court's factual findings lack substantial evidentiary support. Since proof beyond a reasonable doubt must be established for a finding of contempt, substantial evidence to support such a finding is such evidence as could convince a rational trier of fact that the alleged contemnor is guilty of contempt beyond a reasonable doubt.

*Id.* (citations and internal quotation marks omitted). Thus, "[w]hen we review a contempt finding by certiorari, we determine whether substantial evidence supports the district court's judgment." *In re Marriage of Christy*, No. 18-1702, 2019 WL 6893782, at *2 (Iowa Ct. App. Dec. 18, 2019).

## III.     Analysis

### A.      Contempt Framework

"If a person against whom a . . . final decree has been entered willfully disobeys the . . . decree, the person may be cited and punished by the court for contempt . . . ." Iowa Code § 598.23(1) (2021). Because "[a]n action for contempt is treated in the nature of a criminal proceeding," "[n]o person may be punished for contempt unless the allegedly contumacious actions have been established by proof beyond a reasonable doubt." *Amro v. Iowa Dist. Ct.*, 429 N.W.2d 135, 140

(Iowa 1988). A finding of contempt is appropriate upon a willful violation of a court order. *Ary*, 735 N.W.2d at 624.

The party seeking a contempt finding "has the burden to prove the contemner had a duty to obey a court order and willfully failed to perform that duty." *Id.* The burden then "shifts to the alleged contemnor to produce evidence suggesting the violation was not willful," though "the person alleging contempt retains the burden of proof to establish willfulness beyond a reasonable doubt." *Id.*

> Willfulness can be shown by evidence of conduct that is (1) intentional and deliberate with a bad or evil purpose; (2) wanton and in disregard of the rights of others; (3) contrary to a known duty; or (4) unauthorized, coupled with an unconcern whether the contemner had the right or not.

*Moritz v. Iowa Dist. Ct.*, No. 15-1744, 2016 WL 5930833, at *1 (Iowa Ct. App. Oct. 12, 2016).

### B.    Parenting Time

Staesha first claims the district court erred by finding that her refusal "to have the children ready and out the door for their time with Ray is a violation of the decree" because the "decree is silent on the duty of the parent to facilitate or force parenting time." And she submits she encouraged the children to attend Ray's parenting time and took steps "to foster a better relationship between father and daughters." While Staesha agrees she "stopped short of punishing the girls for not attending Ray's parenting time," she contends this does not rise to the level of willful violation of a court order under our decision in *Terry v. Iowa District Court for Polk County*, No. 17-0959, 2018 WL 3471836 (Iowa Ct. App. July 18, 2018).

In *Terry*, we rejected a claim that a mother "was required to force [the child] to attend visitation with [the father] or penalize her for not attending." 2018

WL 3471836, at *4. Key to our decision was the mother's encouragement of visitation and the child's "concerns that she would harm herself if required to attend visitation" with her father. *Id.* Based on those factors, we concluded that because the father could not show the mother "attempted to interfere with visitation or that she stood by and did not encourage visitation, he failed to show she willfully disregarded the visitation terms." *Id.*; *accord In re Marriage of Boomgarden*, No. 09-1904, 2010 WL 2925828, at *2 (Iowa Ct. App. July 28, 2010) (affirming denial of contempt application where there was no credible evidence the father "willfully interfered with" the mother's visitation rights "or stood passively by, allowing the girls to determine visitation"). We do not have those same factors here.

Even though Staesha testified that she encouraged the children to attend Ray's parenting time, the district court obviously did not buy that claim since it concluded that she "enhanc[ed] an environment where Ray is disrespected and the children are allowed to choose to stay at Staesha's home rather than go to Ray's home." We defer to the district court's implicit credibility assessment on this point. *See Tim O'Neill Chevrolet, Inc. v. Forristall*, 551 N.W.2d 611, 614 (Iowa 1996) (noting issues of credibility "are best resolved by the district court" and will not be reevaluated in a substantial evidence review on appeal). And we find substantial evidence that Staesha interfered with Ray's parenting time by creating an environment that encouraged these pre-teen children's refusal to go to their father's house.

This is shown by several messages Staesha sent to Ray about the parenting time problems. In one, she tells Ray that she "had no valid reasoning to

tell [the older] child as to why she has to go." In another, she simply refuses to return to the Wednesday night schedule in the decree, saying: "Nope I won't be. . . . And we have been doing it for a year so take me to court."

Like the district court, we also find Staesha's text messages with the older child telling. In an exchange with the child about the Wednesday night visitation, Staesha tells the child: "Sounds like it's just getting worse and worse. He's gonna call the cops if I don't take you home Wednesday[s]. . . . So stupid." The child replies, "mhm," which prompts Staesha to message: "That was our time. And it's been like that for a year." In another message, Staesha tells the child:

> [S]orry things are like this. I tried my hardest to make sure things between your dad and I were good. I don't know what's going on with him but I'm sorry that you're having to live how you do. . . . I want to make sure my House is safe and comfortable for you and that you always feel good with me.

We also observe it was only after Staesha started a confrontation with Ray in front of the children at a custody exchange in April 2021 that the older child got out of Ray's car to run back to Staesha's house. Rather than returning the child to Ray, Staesha went to his home with the child and demanded the child's belongings, remaining there until police arrived to diffuse the situation. After that, Staesha tells Ray the older child "will not be coming back to your home for her own safety for the time being." *See Rausch v. Rausch*, 314 N.W.2d 172, 174 (Iowa Ct. App. 1981) (upholding contempt finding where mother did not encourage child to attend visitation when child said that she did not want to go).

While Staesha often expressed her concern with the children's emotional well-being at Ray's house, there was no evidence that his house was unsafe or that the children were subject to abuse there. *See Mann v. Iowa Dist. Ct.*,

No. 09-0807, 2010 WL 624248, at *3 (Iowa Ct. App. Feb. 24, 2010) (stating a parent cannot rely on the duty to protect a child as a defense to contempt when the alleged threat of abuse is not founded); *see also Ary*, 735 N.W.2d at 624 (shifting burden to contemnor after violation of court order proven to show violation was not willful). Instead, the older child's dissatisfaction with Ray's house seems to have started when he implemented rules about electronic devices. *Cf. Terry*, 2018 WL 3471836, at *2 (discussing contempt for denial of visitation for child with "suicidal thoughts and self-harms when staying with" her father).

Bottom-line, "[i]n no case may a child be allowed to control whether visitation occurs." *In re S.P.*, No. 16-1919, 2017 WL 108798, at *5 (Iowa Ct. App. Jan. 11, 2017) (quoting *In re Hunter S.,* 48 Cal. Rptr. 3d 823, 828 (Cal. Ct. App. 2006)). Staesha allowed this to happen—despite the lip service she paid to encouraging visitation—when she fed into the children's dissatisfaction with the rules at Ray's house and stood passively by when they refused to attend parenting time with him. We agree with the district court's finding of contempt and annul the writ of certiorari on this count.

### C.    Remaining Violations

The remaining contempt findings generally related to Staesha's duties as a joint legal custodian—fostering affection and respect, not acting to estrange the children from or impair their perception of Ray, and supporting his disciplinary measures and shielding the children from parental disagreement.[6] Staesha claims

---

[6] At the outset, we summarily reject Staesha's claim that the decree is "indefinite and uncertain" on these duties, which she contends are "merely informational rather than directives from the court." The decree, which adopted the stipulated agreement in its entirety, provided the parties "shall" accomplish these duties. So

there is insufficient evidence to show she willfully violated these duties. She again relies on her testimony that she encouraged a healthy relationship between Ray and the girls. She also argues the evidence shows she did not undermine Ray's disciplinary measures.

The district court found Staesha's text messages with one of the children and her acts in relation to Ray's parenting time established she willfully violated her duties under the decree. The text messages show Staesha talked to the children about things Ray did that could "make dad in trouble for what he did 5 years ago"; criticized Ray's new significant other; implied Ray's house was "drama"; spoke about at least one of the children possibly running away from Ray's home, which the older child ended up doing (more than once); described Ray's home as "worse and worse"; advised Ray would "call the cops" if she did not follow the decree as to mid-week visits; stated remorse for one of the children "having to live how you do" at Ray's; encouraged the child to lie about having her phone in contravention of Ray's rules and "[e]rase these texts" about it; and told the child she "worr[ies] about you girls" at Ray's. We also have the evidence that Staesha created an environment accepting of the children's refusal to go to Ray's, as discussed above.

On our review, we agree with the district court that "Staesha is fueling whatever issues there are between Ray and the minor children," and her statements and actions are contrary to her duties to (1) "act to foster feelings of

the duties listed were not "merely informational" but instead concrete directives on how the parties needed to act as joint legal custodians. *Cf. State v. Klawonn*, 609 N.W.2d 515, 522 (Iowa 2000) (en banc) ("[W]e have interpreted the term 'shall' in a statute to create a mandatory duty, not discretion.").

affection and respect between" the girls and Ray, (2) support disciplinary decisions and not discuss parental disagreements with the children, (3) not engage in acts that may estrange the children from Ray, and (4) not engage in acts that may impair their high regard for Ray. We accordingly annul the writ of certiorari on these four counts of contempt as well.

### D. Attorney Fees

Staesha's challenge to the district court's award of trial attorney fees to Ray is limited to her argument that she should not have been found in contempt. Because we have declined to overturn the court's contempt findings, we do not disturb its award of trial attorney fees. *See* Iowa Code § 598.24 (authorizing taxing of attorney fees against a party who is found in contempt); *Farrell v. Iowa Dist. Ct.*, 747 N.W.2d 789, 792 (Iowa Ct. App. 2008).

Staesha also requests an award of appellate attorney fees. But section 598.24 only authorizes taxing of attorney fees against a contemnor, so she does not qualify for an award. *See In re Marriage of Shaman*, No. 14-0410, 2014 WL 7343748, at *2 (Iowa Ct. App. Dec. 24, 2014) (noting section 598.24 does not permit courts to award trial or appellate attorney fees to a party defending against a contempt action).

Ray, although self-represented, also requests a monetary award for his efforts on appeal, stating he "has incurred substantial loss to his time and resources with the efforts he has spent on this case representing himself as a pro se litigant to get the justice God and this court deems appropriate." We deny the request as unauthorized by the statute, which only authorizes an award of "the costs of the proceeding, including reasonable attorney's fees." *Cf. Fritzsche v.*

*Scott Cnty.*, No. 09-0860, 2010 WL 2383913, at *2–3 (Iowa Ct. App. June 16, 2010) (finding statute authorizing "payment of all costs and reasonable attorney fees in the trial and appellate courts" to successful party does not authorize an award of fees to a pro se litigant).

## IV.    Conclusion

Because we find a rational fact finder could reasonably conclude Staesha is guilty of contempt beyond a reasonable doubt for denying Ray parenting time and engaging in conduct contrary to known duties under the decree, we annul the writ of certiorari.  We also deny Staesha's challenge to the court's award of trial attorney fees to Ray and both parties' requests for an award of appellate attorney fees.  Costs on appeal are taxed to Staesha.

**WRIT ANNULLED.**