**IN THE COURT OF APPEALS OF IOWA**

No. 23-1804
Filed August 7, 2024

**IN RE THE MARRIAGE OF LAURA L. DEWHURST
AND BRYAN M. DEWHURST**

**Upon the Petition of**
**LAURA L. DEWHURST, n/k/a LAURA L. IMSLAND,**
        Petitioner-Appellee,

**And Concerning**
**BRYAN M. DEWHURST,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Story County, James C. Ellefson,

Judge.


        A father appeals from a ruling concerning the partial grant of his application

for rule to show cause.  **AFFIRMED.**


        Nicole S. Facio of New Point Law Firm, PLC, Ames, for appellant.

        J. Michael Boomershine of Sullivan & Ward, P.C., West Des Moines, and

Andrew Howie, West Des Moines, for appellee.


        Considered by Greer, P.J., and Ahlers and Langholz, JJ.

**GREER, Presiding Judge.**

After a two-day hearing,[1] the district court resolved part of Bryan Dewhurst's application for rule to show cause against his ex-wife Laura Imsland, formerly Laura Dewhurst. Set out in three counts, Bryan requested that Laura be held in contempt for violating a custodial court order. The court dismissed two of the counts but found Laura in contempt under count II for undermining Bryan's disciplinary actions by buying a replacement cell phone for M.G.D.[2] after Bryan had taken the child's phone as a punishment. On appeal, Bryan challenges the dismissal of count I, which involved the claim that Laura violated the court order by not facilitating the return of M.G.D. to Bryan's physical care after the child left his home in February 2023. Laura counters by arguing the court correctly dismissed count I.[3] Each party also requests appellant attorney fees. We affirm the court ruling and deny the requests for attorney fees.

**Facts and Procedural Background.**

When the parties terminated their marriage in August 2015, they stipulated to joint legal custody with physical care in Laura. In September 2018, citing issues between Bryan and M.G.D., Laura petitioned to modify the visitation provisions of the decree. In response, Bryan also applied for a modification, citing Laura's lack of support of his relationship with the children and requesting that he have physical

---

[1] The hearings were held on June 8 and August 10, 2023.
[2] As their eldest child, M.G.D. was almost seventeen years old at the time of these 2023 proceedings. The parties have two other children not central to the issues of this appeal.
[3] Laura also makes a mootness argument, as she contends she already served her punishment for the contempt finding related to count II, but this appeal is over the dismissal of count I only, so we do not address the mootness argument.

care of the children instead of Laura. In January 2020, the district court modified the custodial arrangement, finding that Laura indeed had not supported Bryan's relationship with M.G.D. and granting Bryan physical care of the three children. Laura appealed this ruling, but it was affirmed and procedendo issued in September 2020. *See In re Marriage of Dewhurst,* No. 20-0123, 2020 WL 4814159, at *5 (Iowa Ct. App. Aug. 19, 2020) ("With extensive evidence of Laura's disdain for Bryan and her efforts to undermine his relationship with the children on one hand and Bryan's mature and sensitive responses to stay engaged with the children on the other, we agree with the district court's detailed analysis.").

Again, in October 2021, Laura petitioned for modification asking for the return of physical care to her. Prior to the trial scheduled in July 2022, the parties resolved the dispute and stipulated to expanding the visitation rights of Laura. But things continued to not go well, and by February 28, 2023, Bryan applied for a rule to show cause to cite Laura for contempt of the court's order, citing Iowa Code section 598.23 (2023). Laura's March 22, 2023 petition to again modify the custodial provisions of the decree as to the care of M.G.D. followed. Bryan's allegations in the rule to show cause application centered around his claims that Laura did not support his disciplinary and parenting decisions and Laura's failure to abide by the court-ordered custodial plan as to M.G.D. The court set the hearing on the contempt allegations, and it was tried separately from the modification action.

At the contempt hearing, Bryan contended that as of May 2020 all "things [were] going well, no need for therapy" for M.G.D. and him. But, conflicts developed between the parents involving social media use, the child's work

schedule at an elderly care center, and expenditures, plus Bryan explained that the child was having issues with friend relationships. Then on February 13, 2023, Bryan disciplined M.G.D. for failing to respond to his text messages by taking her cell phone, and the child did not return home after her work shift; Bryan learned from Laura that M.G.D. was refusing to return to his home. And on the night she did not return to her father's home, M.G.D. left a letter to her father in her bedroom explaining her frustrations with him and her life. When he asked Laura to return M.G.D. that evening, Bryan contended that Laura said "she couldn't do anything about it" and the child did not return home. Bryan attempted to talk to M.G.D., but she still refused to return, and because he would not return her phone to her, Laura purchased a new one for M.G.D. to use.

With these actions, Bryan argued that it set a new precedent in his relationship with M.G.D. that "you know, you don't need anything from your father. You don't need to communicate with your father. You can do whatever you want to do." Weeks passed, and still the child remained in her mother's home without consequences for not abiding by her father's requests and wishes, up to and including the date of the first hearing in June 2023. Bryan asserted Laura made no genuine effort to support his custodial rights. To all these claims, Laura responded that M.G.D. was in therapy to address these issues, she had voluntarily visited Bryan's home, he was allowing her to come and go as she pleased and that *both* parents could not talk the child into returning to Bryan's home. Indeed, Bryan had been to a few counseling sessions with M.G.D., but he claimed he asked Laura to present a united front and she refused. Rather than meeting to discuss the problem, Laura indicated she was providing a "safe place" until the child could

"work through things." But during these contempt proceedings, both Laura and M.G.D. testified that Laura did encourage the child to return to Bryan's home and, at one point, even tried to drive M.G.D. there, but the child would not get out of the car. In fact, M.G.D. stated that her mother always encouraged her to go over to her father's house and that it was her father who was more likely to block her from going to her mother's home. And M.G.D. described some minimal consequences imposed upon her by her mother for refusing to return to Bryan's home, such as removal of her phone and loss of driving privileges. On this same point, Laura testified she encouraged the child to go back and—as of the second day of the hearing—M.G.D. was visiting Bryan's home for different occasions and had gone out to dinner and movies with Bryan.

By all accounts in this record, M.G.D. is an outstanding student, athlete, and person who did not get into trouble. Yet, from the therapist notes that were entered into evidence, there were reports of feeling anxious and having difficulties with communication with Bryan. The therapist also offered testimony in the contempt proceedings primarily centered on M.G.D.'s mental health and counseling concerns. The therapist stated that Bryan and M.G.D. were involved in therapy sessions but she was unaware of any request by Bryan to have Laura attend sessions with the two of them as well. On a positive note, the therapist rated the child's insight at a 9.5 on a 10-point scale as to her coping-skill ability, ability to adapt and ability to handle things. And, while the child reported to the therapist that she had issues with her father, she did not mention any abuse or safety concerns. To add to that, the therapist testified that relationship issues with family and friends are not uncommon for teenagers.

The court entered an order in October 2023 finding that Laura was in contempt of court under count II, which involved Laura's willful action of not supporting Bryan's cell phone disciplinary measure and instead providing M.G.D. with more than a basic cell phone.[4] The court observed that Laura's decision to provide an upgraded phone loaded with various social media applications worked against her argument that she only replaced the phone Bryan took as a punishment for "safety reasons." As to the other counts, the court dismissed them, citing similar reasoning: that Bryan did not meet his burden of proof and that the court would not impose contempt based upon behaviors that preceded the January 2020 modification of the custodial arrangement. Yet the court forewarned, "This court does not agree with the premise that a teenager should be allowed to make her own decision about where she should live and whether or not she will obey a custodial order. '[I]n no case may a child be allowed to control whether visitation occurs.'" (Citation omitted.) Yet, specifically as to count I, the court concluded there was reasonable doubt that Laura attempted to interfere with Bryan's custodial time with the child and holding her in contempt of court would likely not benefit anyone in the end.

On appeal, Bryan requests that we reverse the court's decision as to count I and remand for imposition of an appropriate penalty against Laura.

**Standard of Review.**

We review the dismissal of an application for rule to show cause in a contempt proceeding for an abuse of discretion. *See In re Marriage of Swan*, 526

---

[4] As a punishment, Laura was sentenced to four days in jail; she did not appeal that ruling.

N.W.2d 320, 327 (Iowa 1995) (noting the court has broad discretion and the decision must stand unless this discretion is grossly abused when contempt action is brought under section 598.23, which allows but does not require a court to hold a party in contempt when the elements are met). "The decision of the trial court [not to hold a party in contempt in a dissolution proceeding] will not be lightly reversed." *In re Marriage of Hankenson*, 503 N.W.2d 431, 433 (Iowa Ct. App. 1993).

**Analysis.**

To start the analysis, we note that as to count I, the district court alluded to the fact that even if the elements of contempt of court were met, the court could exercise its discretion to not impose punishment for contempt. *See Swan*, 526 N.W. 2d at 327 ("Under statutes such as [sections 598.23 and 598.23A], a trial court is not required to hold a party in contempt even though the elements of contempt may exist."). And certainly, a party may fail to follow a court order, yet not have acted with the willfulness required to support a contempt finding. *See Farrell v. Iowa Dist. Ct.*, 747 N.W.2d 789, 792 (Iowa Ct. App. 2008). Here, the court found Bryan had not met his burden by proving the requisite willfulness beyond a reasonable doubt.

Because a contempt proceeding is quasi-criminal in nature, Bryan had to prove beyond a reasonable doubt that Laura had a duty to obey a court order and that she willfully failed to perform that duty. *See Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007). And "[b]ecause a finding of contempt must be established by proof beyond a reasonable doubt, substantial evidence sufficient to support a finding of contempt is evidence that could convince a rational trier of fact

that the alleged contemner is guilty of contempt beyond a reasonable doubt." *Id.* at 624–25. "If the party alleging contempt can show a violation of a court order, the burden shifts to the alleged contemner to produce evidence suggesting the violation was not willful." *Id.* at 624. Establishing "willful disobedience" "requires evidence of conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not." *Lutz v. Darbyshire,* 297 N.W.2d 349, 353 (Iowa 1980), *overruled on other grounds by Phillips v. Iowa Dist. Ct.,* 380 N.W.2d 706, 707–09 (Iowa 1986).

As the court reasoned, Laura's complained-of behavior pre-existed the time frame over which contempt was alleged and there was no "new conduct" by Laura since the January 2020 modification action that rose to the standard of willfulness. Taking a practical path to resolution, the court concluded "there is a reasonable doubt regarding any attempt to interfere, and as an exercise of discretion because holding her in contempt on [count I] is not likely to result in any real benefit," it would not hold Laura in contempt. The court opined that finding Laura in contempt for M.G.D.'s failure to return to Bryan's home might drive a "deeper wedge" between the relationship of father and daughter, who was just shy of turning seventeen. We also note that Bryan did have some contact with M.G.D. at his home and was unable to get her to stay and, as the therapist noted, no one made efforts to request that counseling be used to resolve the barriers to a return to his home. Further, the court noted there were some efforts made by Laura to encourage a return to Bryan's house, which the court heard from both Laura and

M.G.D. We give weight to the court's assessment of credibility, especially when it is a factor in the outcome. *See Hora v. Hora*, 5 N.W.3d 635, 645 (Iowa 2024).

Although the court found Laura's decision to "wash her hands of the entire matter" came "perilously close" to allowing M.G.D. to make a unilateral decision about where she could live, after considering all of the circumstances, the court found Laura was in contempt on only one count of the allegations. And because as a reviewing court we have limitations over solving a family's dysfunction, those other circumstances a court is able to assess at the trial court level are important in the decision to impose punishment for contempt. "[T]he trial court may consider all the circumstances, not just whether a willful violation has been prove[d] in deciding whether to impose punishment for contempt." *In re Marriage of Jones*, No. 17-1113, 2018 WL 2725371, at *1 (Iowa Ct. App. June 6, 2018) (citing *Swan*, 526 N.W.2d at 327); *see also In re Marriage of Senatra*, No. 21-0171, 2021 WL 4304276, at *3 (Iowa Ct. App. Sept. 22, 2021) (affirming district court's decision refusing to find a party in contempt where the failure to mend the relationship between the father and child, not willful behavior of the mother, accounted for the refusal to visit).

Here, we find no abuse of discretion by the court in considering all the circumstances and determining that Bryan could not meet the high burden to prove willfulness on the part of Laura. Laura and M.G.D. both testified to Laura's efforts and encouragement to have the child re-engage with her father. Counseling was started and supported and yet, the child still had not returned. True, while there could have been more action from Laura in moving along the transition back to Bryan's house, there is not substantial evidence that Laura willfully encouraged

M.G.D. to stay away from her father. Yet, as the court noted in its ruling, and we agree, this is not to say that we approve of how the situation played out in this case and the latitude given to a child to control the custodial arrangement. *Cf. In re S.P.*, No. 16-1919, 2017 WL 108798, at * 5 (Iowa Ct. App. Jan. 11, 2017) (citing *In re Hunter S.*, 48 Cal. Rptr. 3d 823 , 828 (Ct. App. 2006) ("In no case may a child be allowed to control whether visitation occurs.")). But even though we do not expect these parties to be friends, we do expect behavior evidencing an attitude of civility and effective and open communication for the benefit of the child. *Cf. In re Marriage of Bolin*, 336 N.W.2d 441, 447 (Iowa 1983) ("One might well consider the suitability as custodian of any parent unable to meet these minimum requirements [of communication and cooperation]."). As the parties look back, they should know that this is a prime example of how the lack of effective communication between parents can play out. We can only hope this is a teaching moment to avoid what is to come if they both do not change their ways.

Finally on the subject of the attorney fee requests, because each party only partially prevailed in the underlying contempt proceeding, we decline to order either party to pay the other party's appellate attorney fees. *See* Iowa Code § 598.24 (allowing the award of attorney fees in an action for contempt of a dissolution); *see also Farrell,* 747 N.W.2d at 792.

**Conclusion.**

We affirm the district court ruling as to count I of the rule to show cause application and deny all requests for appellate attorney fees.

**AFFIRMED.**

Langholz, J., concurs; Ahlers, J., specially concurs.

**AHLERS, Judge** (specially concurring).

The district court declined to hold Laura Imsland in contempt as to count I for two reasons: (1) Bryan Dewhurst failed to meet his burden to prove Laura intentionally interfered with his physical-care rights beyond a reasonable doubt and (2) even if Bryan had met his burden, the court exercised its discretion to refrain from holding Laura in contempt. I write separately because I don't entirely agree with the majority opinion's characterization of Laura's conduct and whether it constituted a willful violation of the applicable decree. I don't find it necessary to detail the areas of disagreement, however, because I believe the case can be decided on the narrower ground of the district court's discretion.

As noted by the majority, the district court has broad discretion to consider all circumstances and decline to hold a party in contempt even if the party willfully violated a court order. *See In re Marriage of Swan*, 526 N.W.2d 320, 327 (Iowa 1995). When a district court exercises that discretion, the decision stands unless the discretion was grossly abused. *See id.* The district court chose to exercise that discretion here. Because that discretion was not grossly abused, I would affirm based on the exercise of discretion and not reach the question of whether Bryan met his burden of proving that Laura intentionally interfered with his physical-care rights.